McCALEB, Justice.
 

 Estate of J. A. Bentley has prosecuted this appeal from a judgment of the Ninth
 
 *306
 
 Judicial District Court which affirmed a decision of the Board of Tax Appeals determining a deficiency in income taxes of J. A. Bentley for the fiscal year 1935.
 

 The facts which gave rise to the controversy are as follows :
 

 During the year 1935 and prior thereto, J. A. Bentley Lumber Company was a commercial copartnership consisting of J. A. Bentley and the heirs of E. W. Zimmerman. This copartnership was engaged in the lumber business in this State and was the owner in fee of numerous and large tracts' of pine timber and cut-over lands situated in the Parishes of Rapides, Vernon and Natchitoches. During the years in which the copartnership was engaged in business, it regularly kept its books and records on the accrual method of accounting.
 

 In 1935, the Louisiana Tax Commission, acting through its agents and attorneys, Huey P. Long and Peyton R. Sandoz, directed the assessors of the three parishes in which the lumber company’s timberlands were situated to reassess the value of these lands for ad valorem taxes due during 1932, 1933 and 1934, so as to reflect the value •of certain timber standing on said lands which had not been included in the original assessments. At the same time, these agents for the Louisiana Tax Commission wrote to the lumber company making demand upon it for additional taxes for the years 1932, 1933 and 1934 aggregating the sum of $223,619.83 resulting from the inclusion of the unreported timber in the reassessment of its properties. The lumber company vigorously protested against liability for the additional taxes maintaining that a true and correct return of the value of its properties situated in the three parishes had been made for the years 1932, 1933 and 1934; that all taxes due and assessable had been paid and that no retroactive assessment could legally be made. These protests were denied and, thereupon, the lumber company prepared a suit against the Tax Commission, the assessors and the tax collectors to enjoin the collection of the taxes. However, before this contemplated suit -was filed, negotiations were commenced between representatives of the lumber company and the agents for the Tax Commission, which resulted in a compromise of the differences existing between them. According to this compromise, the lumber company agreed to pay, and the Tax Commission to receive, the sum of $75,000 in full settlement of the claim of $223,619.-83 for the back taxes due by the lumber company for the years 1932, 1933 and 1934, and, as a further consideration, the Tax Commission agreed that, for the purpose of obviating any future dispute over the amount and valuation of pine timber lands and physical properties owned by the company, the basic assessment of the lumber company’s property beginning with the year 1935 would be static and in accordance with the valuation fixed in the settlement.
 

 ■ In filing its income tax return for the year 1935, the lumber company deducted from its gross income the amount of $75,-000, which it had paid to the State as back taxes in conformity with its compromise with the taxing authorities. With this deduction, the partnership return showed á
 
 *307
 
 net income of $130,232.06. Mr. J. A. Bentley had a two-thirds interest in the copartnership and, in making his individual state income tax return for 1935, he reported having received from the copartnership the sum of $86,821.37 or two-thirds of the co-partnership’s net income. Thereafter, the State Collector (now Director) of Revenue, being of the opinion that the payment by the lumber company in settlement of the additional taxes claimed by the Tax Commission for ad valorem taxes on the company’s property for the years 1932, 1933 and 1934, was improperly deducted as an expense accruing in 1935 from the partnership’s computation of its net income for that year, refused to recognize the $75,000 deduction from the partnership’s gross income for 1935. He ruled that, since Mr. Bentley had a two-thirds interest • in the lumber company, his income from it was, accordingly, increased by the sum of $50,-000 (or two-thirds of $75,000) and that he, therefore, owed the State for income taxes for 1935 an additional $3,000, plus interest, since the $50,000 when added to his net income and taxed at 6% was equal to that sum.
 

 When this deficiency assessment of income taxes was asserted by the Collector of Revenue, the Estate of Mr. Bentley (he having died in the meantime) appealed to the Board of Tax Appeals, where, after hearing the parties, the determination of the Collector of Revenue was upheld on the ground that, since the lumber company kept its books on an accrual basis, the additional tax payments which it made by way of compromise for the years 1932, 1933 and 1934 should have been accrued by it on its statement for those respective years in order that its true net income be accurately shown.
 

 The Board based its decision on the authority of the case of A. Wilbert’s Sons L. & S. Co. v. Collector of Revenue, 196 La. 591, 199 So. 652, which it found to be indistinguishable from the case at hand. From the adverse ruling of the Board of Tax Appeals, the taxpayer appealed to the Ninth Judicial District Court for the Parish of Rapides where the ruling of the Board was affirmed.
 

 In its appeal to this Court from the unfavorable decision below, the Estate of Bentley makes four contentions which are relied upon for reversal. These contentions, which are listed in its counsel’s brief, are as follows:
 

 1. That the Board erred in failing to find as a fact that the taxpayer alleged and proved that the lumber company could not accrue the additional taxes in the years 1932, 1933 and 1934, since the company had no means of ascertaining and could not anticipate that these taxes would be subsequently assessed because all its lands and timber thereon had already been reported for taxes and assessed for those years.
 

 2. In the alternative, that the Board erred in failing to find as a fact that the taxes paid as a result of the compromise were deductible only in the year the compromise was consummated which was the year in which the tax rolls assessing the additional taxes were filed.
 

 
 *308
 
 3. That the Board erred as a matter of law in applying the findings in A. Wilbert’s Sons L. & S. Co. v. Collector of Revenue, supra, because the contentions in that suit were entirely different and distinct from the contentions made in the instant matter, and further erred as a matter of law in applying the legal principles enunciated in United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, to the facts of the case.
 

 4. That the Board erred in holding that the taxes paid in the year 1935 as a result of the compromise were not deductible as a tax for the year 1935 under the provisions of the State Income Tax Law.
 

 It is obvious from a mere statement of the contentions made by the taxpayer that the third point advanced by it must be 'disposed of at the outset, — for, if it is found that the Board of Tax Appeals was correct in holding that this case is identical with the Wilbert case, then it will be unnecessary to discuss the remaining point unless it be that the decision in the Wilbert case is incorrect and should be overruled. Therefore, we address our immediate attention to the Wilbert case in order to discern whether, as claimed by the taxpayer, there is any logical distinction between the facts of that matter and those appearing here.
 

 The facts presented to us in the Wilbert case were as follows: Wilbert Company was a domestic corporation engaged in the lumber business and owned timberlands in the parishes of Ascension, Iberville and West Baton Rouge. It paid ad valorem taxes which had been assessed against its lands in the above-mentioned parishes for the years 1932, 1933 and 1934. In 1935, the Louisiana Tax Commission wrote to the company claiming additional sums amounting to $129,265.89 for back taxes accruing in 1932, 1933 and 1934, on the ground that the company had been underassessed and had failed to report the true value of certain timber on its property. Protests were made by the company and, later, as a result of negotiations conducted between it and the attorney for the Tax Commission, a compromise agreement was reached whereby the company paid the sum of $26,-468.94 in full settlement of the back taxes due by it for the years 1932, 1933 and 1934. The amount of this compromise was deducted by the company on its income tax returns for 1935 and 1936. •_ The deduction was disallowed by the Collector of Revenue and proceedings were instituted by the Company before the Board of Tax Appeals for a redetermination of the deficiency asserted by the Collector. The Board upheld the decision of the Collector. An appeal was thereafter taken to 'the Nineteenth Judicial District Court where the decision of the Board was affirmed. The case, thereafter, reached this Court on an appeal from the affirmance of the Board’s decision by the District Court.
 

 The contention made by the company in that case was that it was .entitled to deduct from its 1935 and 1936 income tax returns the $26,468.94 paid to the State in compromise or the claim for back taxes for the years 1932, 1933 and 1934, for the reason that it was not legally liable for
 
 *309
 
 those taxes and that the payment had been made solely for the purpose of avoiding a lawsuit and to protect its business from future harassment. We held that, if the payment to the State be regarded as a compromise in order to avoid litigation and not as a payment of taxes, the amount thereof would not be deductible under our income tax law as an ordinary or necessary expense of the company’s business. And we further found that the amount of the compromise, if legally deductible at all from the gross income of the company, must be deducted as “Taxes Paid”, and that, since the company kept its books on an accrual basis, the payment made should have been accrued as deductible taxes in the years 1932, 1933 and 1934. On that point, we said [196 La. 591, 199 So. 654]:
 

 “The amount appellant paid to Sandoz can he deducted only as taxes, if deductible at all. This being true, the amount paid to settle the taxes must be considered and treated in the same manner as the other taxes which appellant accrued on its books, as that is the method of accounting followed by appellant.
 

 “It is well settled that a taxpayer who keeps his books on the accrual basis should deduct taxes from gross income for the taxable year in which such taxes accrued and not for the year in which they are paid. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347.”
 

 A comparison of the facts of the Wilbert case and those of the instant matter clearly discloses that there is no difference between the two cases. But counsel for the taxpayer in this matter maintains that there is a distinction because, in the Wilbert case, the taxpayer was contending that the compromise agreement was entered into solely for the purpose of relieving the taxpayer from unreasonable harassment on the part of the Tax Commission, and further maintained that there was no legal liability for the payment of the additional taxes claimed by the State; whereas here the Estate of Bentley is not contesting the legality of the additional taxes claimed by the State. In explanation of this suggested difference, counsel proclaims that, while it is not maintained here that legal liability did not exist for the payment of the additional back taxes for 1932, 1933 and 1934, the lumber company nevertheless had the right to deduct its payment of those taxes in its income tax return for 1935 because, in view of the jurisprudence established by this Court in Delta Land & Timber Company v. Police Jury, 169 La. 537, 125 So. 585, and Pickering Lumber Co. v. Police Jury, 169 La. 540, 125 So. 586, it could not in 1932, 1933 and 1934 (when it accrued taxes) anticipate that the State of Louisiana would ever be permitted to subsequently assert a claim for additional taxes on timber which was not reported or assessed for those years.
 

 Counsel is in error in his interpretation of the decision in the Wilbert case. We clearly stated there that, if the compromise payment could be deducted at all, it would have' to be deducted as taxes paid in settlement of a legal claim and that, since the taxpayer kept its books on an accrual basis, the taxes should have been accrued
 
 *310
 
 for the years in which they were properly chargeable against gross income.
 

 What counsel is apparently attempting to argue is not that the Wilbert case is distinguishable from this one but that that case was incorrectly decided, because we did not consider the question involved from the standpoint of whether the taxpayer, in keeping books on an accrual basis, could have anticipated the additional levy of taxes, and.he asserts that, where a tax may not be foreseen, it can be accrued only in the year when it is paid. In support of this argument, counsel maintains that the case of United States v. Anderson, supra (which is cited by us in the Wilbert case), is authority only for the proposition, that taxes should be accrued in the year in which they are properly chargeable in order to reflect true net income irrespective of when they actually become due and are paid (in cases where the taxpayer’s books are kept on an accrual basis) but that the Anderson and other cases decided by the Federal Courts clearly sustain the view herein contended for that the accrual of the tax may not be made in the year in which it is properly chargeable, if it is shown that the taxpayer had no knowledge of the existence of the tax or could not anticipate that it would be levied.
 

 We cannot agree with this proposition. Under the State Income Tax Law, Act No. 21 of 1934, the taxpayer has the option of keeping his books upon either a cash or an accrual basis. If he elects to use the accrual basis (as in this case), it is only reasonable to require him to accrue all deductible expenses in the years in which they are properly and normally chargeable for the reason that the very purpose of the accrual method of accounting is to reflect a true picture of net income in any given year. Accordingly, it makes no difference under this method of accounting when the expense or tax is paid, for it must be accrued in the year in which it was properly chargeable as a deductible expense. And we cannot see that it is of importance whether the taxpayer in making his accounts could anticipate or foresee a particular expense, if it subsequently develops that the expense has come into existence and that it was properly attributable as a deductible item on the account of a previous year. In such case, the books can be corrected so as to show the true income.
 

 Counsel for the taxpayer, in arguing to the contrary, has directed our attention to a number of federal decisions (Union Bleachery v. Commissioner, 4 Cir., 97 F.2d 226; Commissioner v. Central United Nat. Bank, 6 Cir., 99 F.2d 568; Cecil v. Commissioner, 4 Cir., 100 F.2d 896, and Commissioner v. Cudahy Family Co., 7 Cir., 102 F.2d 930), which he claims are authority for the proposition that the accrual cannot be. made unless the tax or other expense can be foreseen. It is true that the Courts in the cited cases, in applying or distinguishing the doctrine established in United States v. Anderson, supra, have drawn certain fine distinctions with respect to accrual accounting and as to whether taxes or other items of deduction can be accrued in the years against which
 
 *311
 
 they would be normally charged in determining net income if the taxpayer was unable to anticipate the expenses at the time he makes up his yearly statement. Be this as it may, we find that in a comparatively recent decision of the Supreme Court of the United States on this subject (Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 145, 75 L.Ed. 397), that Court has decided that, where a taxpayer keeps his books on an accrual basis and fails to accrue certain taxes in the year to which they are attributable, he may not deduct them in the following year in which they were paid but that he should readjust his accounts so as to charge them against his gross income for the year in which they accrue — and this, notwithstanding his contention that he could not anticipate the amount of the tax at the close of the fiscal year. There, the taxpayer, in making a statement of its net income for 1918, accrued taxes chargeable for 1918 on the basis of the taxes imposed under the 1917 Revenue Act. 40 Stat. 500. In February, 1919, Congress passed the Revenue Act of 1918, 40 Stat. 1057, which was made retroactive and replaced the prior Act of October 3, 1917. The taxpayer insisted, in a controversy which later arose involving the question of whether the taxes for 1918 had been properly accrued by it, that the deduction of the taxes applicable under the 1917 Act was appropriate since no one could know in the year 1918, when its statement was prepared, that the Revenue Act of 1918 would be passed in February, 1919, and that it would be made retroactive. The Court, however, refused to countenance this argument and held that the taxes were properly accruable under the 1918 Act. It said: “But the 1917 act * * * was in force, and required the payment of the same sort of taxes, and petitioner concedes it accrued its taxes for 1918 and set them up in a reserve at the end of the year. The Act of 1918 was retroactive and replaced the prior act of October 3, 1917 * * * and taxpayers understood that the policy of the United States with respect to income and profits tax was continuous. * * * The taxes in question were provided for by an act passed in February, 1919, but they were for the year 1918. The act was passed in ample time to allow the taxpayer to readjust its accounts for that year by including these taxes; and, since its books were kept on an accrual basis, it was necessary that this should be done in order clearly to reflect the income for 1918.”
 

 So, we say here that, since Bentley Lumber Company kept its books on an accrual basis and accrued the ad valorem taxes levied against its property for the years 1932, 1933 and 1934, respectively, the additional taxes subsequently paid by it for those years, as a result of the compromise, should be accrued and are properly deductible on its books for those respective years in order to reflect its true net income. The fact that the lumber company did not anticipate that a demand would be made upon it for additional taxes is of no moment, because it was presumed to know that the assessments on its property for 1932, 1933 and 1934 did not reflect the actual value of its land and it
 
 *312
 
 should have anticipated that a claim for additional taxes would be made within the three year prescriptive period.
 

 After careful consideration, we are convinced that our decision in A. Wilbert’s Sons L. & S. Co. v. Collector of Revenue, supra, is correct and that the Board of Tax Appeals and the District Judge were right in holding that it was controlling in the case at bar. Accordingly, it is unnecessary to discuss the other contentions of the appellant.
 

 ' For reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., does not take part.