**WEST VIRGINIA PULP & PAPER CO. v. McELLIGOTT, Former Acting Collector of Internal Revenue.**

**SAME v. SHEA.**

**SAME v. EDWARDS, Former Collector of Internal Revenue.**

Nos. L 65-141, L 65-147, L 65-148.

District Court, S. D. New York.

July 31, 1941.

R. B. Goodell, of New York City, for plaintiff.

Mathias F. Correa, U. S. Atty., of New York City (Clarence W. Roberts, Asst. U. S. Atty., of New York City, of counsel), for defendants.

BURKE, District Judge.

Here are three suits at law which have been consolidated. The plaintiff sues to recover income and profits taxes which it alleges were erroneously collected from it for its fiscal years ending October 31, 1918, 1919 and 1921. The suit against Richard J. McElligott is for the amount of $445,381.24, which alleged overpayment is for the fiscal year 1918. The suit against William H. Edwards is to recover the amount of $237,-612.89, representing an alleged overpayment for the fiscal year 1919. The suit against John S. Shea as administrator, etc., is to recover the amount of $120,465.60, representing an alleged overpayment for the fiscal years 1918 and 1921.

With respect to each of the years in question the plaintiff filed with the Commissioner waivers of its right to have its taxes determined and assessed within five years after the filing of its returns. Final determination of the tax for the fiscal years 1918 and 1921 was made and the plaintiff notified thereof by a statutory deficiency letter dated Dec. 27, 1928. The deficiencies were paid in April, 1929. The plaintiff was notified of the final determination of the tax for its 1919 fiscal year in August, 1932, by a statement annexed to a certificate of overassessment setting forth the final determination and showing the plaintiff to be entitled to a credit for overpayment for that year, which was credited against taxes due for other years. Claims for refund of the alleged overpayments were duly filed and rejected. The suits were commenced in September, 1936. The claims involve deductions for amortization of war facilities and deductions for bonus paid to employees.

The question relating to amortization is purely one of law. The dispute is in regard to the method used by the Commissioner of apportioning the allowance to the fiscal years involved and computing the tax. The plaintiff's net income and tax liability for the fiscal years 1918 and 1919 were determined by the Commissioner under the provisions of an amendment of Article 185 of Regulations 45 of the Treasury Department, first promulgated February 21, 1928, which altered the method of apportionment and computation in the case of fiscal year taxpayers. The question presented is whether or not the tax for the fiscal years ending October 31, 1918, and 1919, should be computed so as to allow the full benefit of an agreed allowance of $1,094,438.64 for amortization of war facilities as a deduction from gross income within the amortization period beginning January 1, 1918, and ending December 31, 1918.

The statute allowing deductions for amortization of war facilities, Section 234 (a) (8) of the Revenue Act of 1918, enacted February 24, 1919, 40 Stat. 1077, 1078, reads, in part, as follows: "(8) In the case of * * * facilities * * * acquired, on or after April 6, 1917, for the production of articles contributing to the

prosecution of the present war * * * there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities * * * as has been borne by the taxpayer, * * *."

Article 185, as amended in 1928 and used by the Commissioner in fixing plaintiff's tax liability, provides in part as follows: "The portion of the allowance allocated to the taxable period beginning in 1917 and ending in 1918 shall be the amortization deduction used in computing the net income for such period subject to 1918 rates. The sum of the portions of allowances allocated to each subsequent taxable period shall be allowed as a deduction in computing the taxable net income of such taxable period."

The plaintiff made large expenditures for war facilities and made a claim for the amortization thereof for its fiscal years 1918 and 1919. The Commissioner determined the reasonable allowance deductible by the plaintiff was $1,094,438.64. $1,050,-855.36 thereof was determined in respect of such costs incurred during the period from April 6, 1917, to October 31, 1918. $43,637.29 thereof was determined in respect of such costs incurred during the fiscal year ending October 31, 1919, and $54.01 represents a credit applicable to the 1920 fiscal year. The date of cessation of plaintiff's operation as a war facility was December 31, 1918.

■ The effect of the amended Regulation as interpreted by the Commissioner is to discriminate against fiscal year taxpayers by making the amount of the effective deduction dependent upon the termination of the taxpayer's fiscal year. The result is a re-allocation of the amortization allowance and a change in the amortization period. In the plaintiff's case it was in effect extended, in part, over the last two months of the year 1917, and, in part, over the first ten months of 1919. But no part of the year 1917 may lawfully be included in the amortization period since under the 1917 law, no deduction from 1917 income may be allowed for amortization. The amount deductible within the period from October 31, 1918, to December 31, 1918, was in effect decreased and the amount by which it was decreased was allowed as a deduction from the income of the first ten months of 1919, which was without the amortization period and subject to different tax rates.

The computation of the tax in this manner results in a division of the allowance allocated to the ten months from January 1, 1918, to October 31, 1918, into two parts, 2/12ths or $175,142.56 to the last two months of 1917 and 10/12ths or $875,712.80 to the first ten months of 1918. Thus the taxpayer is deprived of the benefit of a deduction of $175,142.56, that amount being re-allocated to 1917, for which period the law allowed no deduction for amortization. If the taxpayer had received the benefit of this deduction at the rate effective for 1918, which was 82.4%, its tax for the fiscal year of 1918 would be reduced by $144,317.45. In the same way the allowance allocated to the last two months of 1918 is divided into two parts, 2/12ths or $7,272.88 to the last two months of 1918 and 10/12ths or $36,364.41 to the first ten months of 1919, thus reducing the amount deductible within the last two months of 1918 by 10/12ths and allowing that 10/12ths as a deduction from income for the first ten months of 1919, which period is outside the amortization period and subject to different tax rates.

In the case of calendar year taxpayers the application of the Regulation (Article 185, as amended) automatically applies the amortization allowance against the amortization period income and allows an effective deduction for the whole amount at the rates in effect for that period. In the case of fiscal year taxpayers this result may not be accomplished under the amended Regulation unless the entire fiscal period falls within the amortization period. In every other instance discrimination results between calendar year and fiscal year taxpayers. If this inequality is the inevitable result of the application of the statute or if Congress intended that there be such inequality between calendar year and fiscal year taxpayers, the plaintiff may have no relief.

■ No such intention, however, may be spelled out of the statute. Section 234 (a) (8) ordains no method for the application of the amortization allowance either to calendar year or fiscal year taxpayers. Its mandate is, however, that "there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities * * * as has been borne by the taxpayer, * * *". We find here no indication of a legislative intent to discriminate against fiscal year taxpayers. Congress formulated a rule by

Sections 205 and 335 of the Revenue Act of 1918 for computing the tax in the case of fiscal year taxpayers. These sections lay down the details for a proportionate method of computation of the tax of fiscal year taxpayers, whether they are entitled or not to amortization deductions. No reference is made in either of the sections to amortization. Their provisions deal with the application of calendar year rates to fiscal years. The computation of the tax under these sections, of a taxpayer entitled to amortization deduction, presupposes the prior determination of the reasonable deduction required under Section 234(a) (8), which process involves the total allowance, the amortization period and the apportionment of the total allowance within the amortization period. The application of Sections 205 and 335 is the same regardless of the method used in determining what is a reasonable deduction for amortization. Under different methods different results in the tax are reached, not because the computation of the tax differs but because deductions differ. Neither of these sections furnish any indication of a legislative intent to discriminate against fiscal year taxpayers. Section 1309 authorized the Commissioner to make needful rules and regulations for the enforcement of the Act. This was the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. Manhattan General Equipment Company v. Commissioner, 297 U.S. 129, 132, 56 S. Ct. 397, 80 L.Ed. 528. It gave no power to adopt rules except those consonant with the letter and spirit of the statute. These provisions of the statute taken together suggest no intention on the part of Congress to discriminate between fiscal year and calendar year taxpayers.

Article 185 was amended in 1928 pursuant to the decision of the Board of Tax Appeals in American-Hawaiian Steamship Company v. Commissioner, 7 B.T.A. 13, decided May 20, 1927. Prior to its amendment the original regulation promulgated April 17, 1919 was in force. The original Regulation results in no discrimination between fiscal year and calendar year taxpayers except in the case, as was presented in American-Hawaiian Steamship Company, where the amortization period extends throughout the fiscal year involved. Under such circumstances the Board found that the original Regulation worked an injustice, resulted in discrimination, and found a method which, in those circumstances, eliminated the discrimination. The rule evolved in that case, however, which formed the basis of the amended Regulation produces under other circumstances the discrimination that the Board sought to avoid in that case.

In Gorton-Pew Fisheries Company v. Malley, 1 Cir., 78 F.2d 812, decided July 13, 1935, a case similar to the plaintiff's was presented, where the fiscal year ended March 31, 1918, and the period of amortization was the calendar year 1918. There the taxpayer had been deprived of the full benefit of the amortization allowance by the application of the method of Article 185, as amended. The Court there, holding that Congress intended no discrimination between fiscal year and calendar year taxpayers and that Section 234(a) (8) called for the deduction of the whole amortization allowance, formulated a rule which eliminates discrimination and treats calendar year and fiscal year taxpayers alike.

As applied to the instant case amended Article 185 results in throwing part of the amortization allowance outside of the amortization period, the original Regulation permits the entire amortization allowance to be deducted at the rates effective for the amortization period, and the method as applied in Gorton-Pew Fisheries Company case permits the deduction of the entire amortization allowance by applying the deduction only against the income to the period to which it has been apportioned.

 It may be that no formula which may be devised will work with equal justice in all cases. All taxpayers entitled to amortization deduction, however, are entitled to a reasonable deduction even if some require special treatment. The purpose of the provision for amortization deduction is to allow the Treasury Department "to allow special amounts for amortization, according to the peculiar condition in each case". House of Representatives Report 767, 65th Congress, Second Session, page 10.

 It is, however, demonstrable that the method of the amended Regulation inevitably results in discrimination between fiscal year and calendar year taxpayers, except in such circumstances as were presented in the American-Hawaiian Steamship case and that a more reasonable method is available, which will avoid such discrimination without doing violence to the Act. That being so, the Court is

" * * * bound to give heed to the rule that, where a particular construction of a statute will occasion great inconvenience or produce inequality and injustice, that view is to be avoided if another and more reasonable interpretation is present in the statute". Knowlton v. Moore, 178 U.S. 41, 77, 20 S.Ct. 747, 761, 44 L.Ed. 969. The choice lies between the method of the original Regulation and that applied in the Gorton-Pew Fisheries Company case. I think the latter is preferable and should be followed in this case since, as near as foresight will permit a valid conclusion as to the effect of the formula, it will produce equality of treatment in all cases.

Plaintiff also seeks to recover overpayment of tax for the fiscal years 1918, 1919 and 1921 which resulted from the fact that the plaintiff took as deductions in those years in filing its tax returns and was allowed amounts set aside for the payment of bonus to employees rather than amounts actually paid out as bonus. For the years 1916 to 1922 and thereafter through 1930, plaintiff chose the accrual basis for deductions. This method of deduction was acquiesced in by the Government although the Commissioner had at times protested against the method. On January 2, 1931, the Commissioner reversed his position and demanded that bonus deductions be considered on a paid out basis. Thereafter adjustments were made on a paid out basis for all years not barred by the Statute of Limitations. Adjustments on that basis for the years 1916 to 1922 inclusive were barred by the Statute.

■ On January 2, 1931, the time for filing claims for refund on the ground that plaintiff had overpaid for the years 1918, 1919 and 1921, had expired except as to deficiency payments made in 1929. Up to January 2, 1931, the plaintiff had consistently contended that the accrual basis was the proper one for deductions. None of plaintiff's claims for refunds filed prior to January 2, 1931, were broad enough to comprehend a claim for refund for overpayment based upon the ground of having deducted bonus on the accrual basis rather than the paid out basis for no controversy existed. As to the actions against McElligott and Edwards the claims for refund filed subsequent to January 2, 1931, were filed after the Statute had run and will not support a recovery on the issue of bonus deductions. These claims filed in 1932 specify the improper deduction of bonus to employees as a ground therefor,

relate to the years 1918 and 1919 and refer to claims theretofore filed and claim to be supplemental claims. They assert new facts which had not existed prior to January 2, 1931. They introduced a new ground for recovery and were not by way of amplification of claims previously filed. United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405; New York Trust Co. v. United States, D.C., 14 F.Supp. 1012, 1014, affirmed, 2 Cir., 87 F.2d 889, certiorari denied 301 U.S. 704, 57 S.Ct. 937, 81 L.Ed. 1359. In Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265, the amended claim filed after the Statute had run was by way of particularization of that portion of a claim previously filed in general terms and not a new ground for recovery.

■ The plaintiff may not in this action add to its invested capital for 1918 and 1919 the sum of $25,000 paid by the Government in 1937 in settlement of the 1917 action. The settlement was made "with prejudice" and is a bar to the assertion now of rights which flowed from that action. Mars v. McDougal, 10 Cir., 40 F.2d 247, 249, certiorari denied 282 U.S. 850, 51 S.Ct. 28, 75 L.Ed. 753, Pueblo de Taos v. Archuleta, 10 Cir., 64 F.2d 807, 812.

■ For the years 1916 to 1922 inclusive deductions for bonus on the accrual basis were taken by plaintiff and allowed which far exceeded deductions which were properly allowable on a paid out basis. The plaintiff contends that the settlement of the 1917 action by the payment to the plaintiff of $25,000 constitutes an accord and satisfaction and that the Government may not now assert by way of recoupment that the plaintiff had the benefit of an improper deduction for bonus for the year 1917 and may not claim that the plaintiff has underpaid its tax for that year. The 1917 action was based on grounds having nothing to do with bonus deductions. Plaintiff argues that when the settlement was made the Commissioner knew all the facts and the law applicable thereto and it must necessarily be inferred that he corrected the mistake as to improper deduction for bonus when the settlement was made. It argues that the burden is on the Government to show that the plaintiff had the benefit of an improper deduction for bonus for the year 1917. The theory of plaintiff's claim for recovery is that "the defendant holds money, which ex æquo et bono be-

longs to the plaintiff" (United States v. Jefferson Electric Co., 291 U.S. 386, 403, 54 S.Ct. 443, 449, 78 L.Ed. 859) and that unless such money be returned to the plaintiff the Government will be unjustly enriched. Stone v. White, 301 U.S. 532, 537, 57 S.Ct. 851, 81 L.Ed. 1265. The Government may prove any fact "which shows that the plaintiff in equity and good conscience is not entitled to recover in whole or in part". Myers v. Hurley Motor Co., 273 U.S. 18, 24, 47 S.Ct. 277, 278, 71 L.Ed. 515; Naumkeag Steam Cotton Co. v. United States, Ct.Cl., 2 F.Supp. 126, 133, certiorari denied 289 U.S. 749, 53 S.Ct. 694, 77 L.Ed. 1495; Stone v. White, supra. Nor may the plaintiff revive in these actions the controversy regarding its 1917 tax liability because the settlement of plaintiff's action to recover overpayment for that year was made with prejudice.

The defense of recoupment is available as to all three of plaintiff's actions. Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293; Stone v. White, supra, 301 U.S. page 538, 57 S.Ct. 851, 81 L.Ed. 1265; Routzahn v. Brown, 6 Cir., 95 F.2d 766, 769. McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, does not take away the defense of recoupment in the cases at bar. In that case statutory provisions, Sections 607 and 609 of the 1928 Act, 26 U.S.C.A.Int.Rev.Acts, pages 459, 460, made the defense unavailable. "We may assume that, in the circumstances, equitable principles would preclude recovery in the absence of any statutory provision requiring a different result". McEachern v. Rose, supra, 302 U.S. page 59, 58 S.Ct. page 85, 82 L.Ed. 46.

The taxes sought to be recovered by these suits were paid long before the enactment of Sections 607 and 609. It is the policy of Section 609(a) "to stimulate voluntary payment of taxes by giving the taxpayer an immediate refund right free from the danger that it will be credited against a stale deficiency". Harvard Law Review, Vol. 52, 1939, Page 498. A consideration of this policy seems to indicate that Sections 607 and 609(a) should not be construed to have the retroactive effect of taking away the equitable defense of recoupment as applied to claims for refund of taxes assessed and paid before the enactment of those sections, which defense would otherwise be available. Neither McEachern v. Rose nor Lyeth v. Hoey, 2 Cir., 112 F.2d 4, dealt with the retroactive aspect of the application of those sections and may not be considered as authorities holding that recoupment may not be had as to claims for refund of taxes assessed and paid before the enactment of those sections. "A statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required". Texas & Pacific R.R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 354, 51 L.Ed. 553; White v. Hopkins, 5 Cir., 51 F.2d 159. The taxpayer's position is that for the years in which it overpaid its taxes because of improper bonus deductions, a course consistently insisted upon by the taxpayer, it should be permitted to recover, but for the years in which it underpaid its taxes, following the same consistent course of deductions, the Government should not be permitted to recoup, a most inordinate position for the taxpayer and a result to be avoided under equitable principles applicable to suits for overpayment of taxes unless that result is commanded by statute which, I think, is not.

Submit findings and conclusions on notice in accordance with the views expressed herein.