**BEN BIMBERG & CO., Inc., v. HELVER-ING, Com'r of Int. Rev.**

No. 84.

Circuit Court of Appeals, Second Circuit.

March 7, 1942.

Kenneth Carroad, of New York City (Clifford H. Rich and Lawrence W. Kaufman, both of New York City, on the brief), for petitioner.

Joseph M. Jones, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Gerald L. Wallace, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals, assessing an income tax deficiency against the taxpayer for the year 1936, and denying a claim for refund for the same year. The question is whether certain credits granted by cotton mills to the taxpayer, a jobber, should be included in its gross income for the year 1936 as the Commissioner did. During the last ninety days of 1935 the taxpayer had bought cotton goods from the mills, to the purchase price of which the mills added the tax then in force under the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq. Many of the jobbers thought it likely that the act would be declared unconstitutional, and for this reason the mills incorporated into their contracts with the taxpayer the "Charlotte clause," by which, if the tax turned out to be invalid, all taxes included in the purchase price should be refunded, or credited upon the price. The Supreme Court declared the act unconstitutional on January 6, 1936; and the mills thereupon issued "purchase allowances" or credits to the taxpayer in the sum of $19,763.13, all for goods bought before December 31, 1935. Of this sum the taxpayer reported $7,729.45 as income for 1936, because it had issued no corresponding credit memoranda for that amount to its own buyers. It did not report the balance, $12,033.68, because it had in 1936 issued credits to its buyers to that amount, but, as these did not create any obligation, it cancelled them on March 15, 1937 and it has never since made any allowance for them. Upon its books, which were kept on the accrual basis, it entered in 1935 no liability to its buyers for processing taxes, nor did it set up any account of possible amounts due from the mills to it as refunds under the "Charlotte clause," although the books did show the full amount of taxes in question,

$19,763.13, as a deduction from gross income. (So far as appears this was merely included as part of the purchase price of the goods.) It failed to file its return for 1936 by March 14, 1937, thereby subjecting itself to a penalty in addition to the tax. The claim for refund, $954.60, was for the tax imposed upon the sum of $7,729.45—the amount of the mills' refunds which the taxpayer did not credit to·its buyers; this the Commissioner has disallowed and the Board has affirmed his decision. The Commissioner also added the sum of $12,033.68, to the income for 1936, which was the balance of the credits allowed by the mills and credited by the taxpayer to its buyers in 1936, but cancelled in 1937. The deficiency is for the tax on that amount. Thus the only question is, as we have said, whether the credits granted by the mills in 1936 were part of the gross income of the taxpayer for that year.

It has been several times held that the Commissioner may cancel a deduction taken in one year for a tax which the taxpayer has accrued or paid, when the tax has been refunded in a later year because it was unlawfully imposed. Inland Products Co. v. Blair, 4 Cir., 31 F.2d 867; Leach v. Commissioner, 1 Cir., 50 F.2d 371; Bergan v. Commissioner, 2 Cir., 80 F.2d 89. Obviously the Commissioner can do this only when the statute of limitations has not run; but if it has not, we find it difficult to see how such a deficiency assessment can be resisted; the deduction claimed and allowed by hypothesis turns out to have been improper, and the Commissioner has discovered the mistake within the time allotted for correction. The Third Circuit did indeed deny that power to him in J. A. Dougherty's Sons, Inc., v. Commissioner, 121 F.2d 700, in a case where, as here, a tax was later held to be unconstitutional The argument, as we understand it—based upon some of the language in Chicot County Drainage District v. Baxter State Bank, 308 U. S. 371, 60 S. Ct. 317, 84 L. Ed. 329—was that an unconstitutional· tax is not quite a nullity but lives in Limbo, as it were, until the court puts an end to it. The provocation for reaching such a result was very great indeed, for the cancelling of the deduction would have made the taxpayer liable for an undistributed profits tax, although the dividends, which it was to be penalized for withholding, could only have been declared out of the very money reserved to meet the invalid tax which it had deducted in good faith. For these reasons we are disposed to consider the decision as not generally contradicting the power of the Commissioner to cancel such a deduction. Commissioner v. Central United National Bank, 6 Cir., 99 F.2d 568, was quite different; the tax deducted finally turned out to be lawful, and the refund was a windfall to the taxpayer, the result of an unnecessary compromise by the state collector made before the validity of the deducted tax had been finally decided. The Commissioner could not have cancelled the deduction and was limited to surcharging the income of the later year.

On the other hand, in several cases when the time has passed to assess a deficiency for the earlier year, courts have allowed the Commissioner to surcharge the income for the year of the refund. Houbigant, Inc., v. Commissioner, 2 Cir., 80 F.2d 1012; Nash v. Commissioner, 7 Cir., 88 F.2d 477; Union Trust Co. v. Commissioner, 7 Cir., 111 F.2d 60. At first blush these decisions seem to conflict with the doctrine we have mentioned, but on reflection that turns out not to be so. It is true that the expiration of the period of limitation finally establishes the propriety of the deduction; but for that very reason the refund must be included as income in the year in which it is received. The taxpayer continues to insist upon retaining the profit of the deduction so long as he does not consent to a reopening of the assessment; and patently he is not entitled to both deduction and exemption. Nor should he be permitted to reopen it if he would, because that would give him an option to throw the item in whichever year would profit him more. However, when as here the refund is made before the statute has run, there is more plausibility in insisting upon the Commissioner's reassessing the tax, because the result of not doing so is to give him a similar option to that which we deny the taxpayer. Are there just reasons for making a distinction in the Commissioner's case and allowing him at his pleasure either to reassess the original tax, or to include the refund in the income for the later year? It seems to us that there are. By hypothesis the taxpayer continues to insist upon the correctness of the deduction, just as he does when the statute has run in his favor. True, the refund is evidence that the tax refunded was not due when he paid it, and it is theoretically possible to argue that that should charge the Commissioner with the

duty of scrutinizing the taxpayer's earlier returns to see whether he has not deducted it and whether the statutory period has expired for reassessing his income for the year in which he has. It seems to us, however, that that is practically an inconvenient, if not impracticable, burden to impose, especially since the taxpayer always has it in his power to consent to a reassessment by bringing the refund to the Commissioner's notice as soon as he receives it. We need not say whether, if he does, he may compel the Commissioner to reassess the original tax, because here the taxpayer did nothing of the kind; it added a part of the refund to its income, reserving the balance for insufficient reasons. In such a situation the Commissioner should be permitted to take it at its word and treat the deduction as valid, correcting the amount added to the income so as to include all that was in fact received.

Order affirmed.