# ELECTRIC STORAGE BATTERY CO. v. ROTHENSIES.

No. 3299.

District Court, E. D. Pennsylvania.

Oct. 30, 1944.

Charles C. Norris, Jr., William P. Cairo, and John Ross, all of Philadelphia, Pa., for petitioner.

Gerald A. Gleeson, U. S. Dist. Atty., and Thomas J. Curtin, Asst. U. S. Dist. Atty., both of Philadelphia, Pa., and Leland T. Atherton, Sp. Asst. to Atty. Gen., for defendant.

KIRKPATRICK, District Judge.

This is a suit to recover income and excess profits taxes and interest in the sum of $229,805.34, assessed for the year 1935 and paid by the plaintiff under protest. The case was tried to the court without a jury, most, if not all, of the material facts being covered by a stipulation.

The taxpayer (keeping its books and making its returns upon the accrual basis) took deductions in its income tax returns for the years 1922 to 1926 inclusive, amounting in the aggregate to $825,151.52, representing manufacturer's excise taxes which had been assessed against it during those years upon the erroneous theory that the storage batteries which it manufactured were parts of automobiles within the meaning of the Revenue Acts. The excise taxes were paid under protest to avoid penalties, upon demand of the then Collectors of Internal Revenue. The deductions were allowed by the Commissioner and resulted in saving the plaintiff a total of $139,668.83 of income tax for the years in question.

In July 1926 the plaintiff filed a claim for refund of the excise taxes, which was rejected, and the plaintiff then brought suit and finally, on May 1, 1933, after an appeal to the Circuit Court of Appeals, McCaughn v. Electric Storage Battery Co., 63 F.2d 715, obtained a judgment for $1,416,- 567.81, being the amount of excise taxes, with interest. After lengthy negotiations, the government, on October 15, 1935, paid the plaintiff $1,395,515.35, which sum the plaintiff accepted in full satisfaction of the judgment.

The Commissioner added the bulk of this sum [1] to the income returned by the plaintiff for 1935, and as a result assessed additional income and excess profits taxes amounting, with interest, to $229,805.34. This the plaintiff is seeking to recover in this suit.

An additional fact is that for the years 1919 to 1922 inclusive the plaintiff paid, under protest, a total of $534,205.04 [2] as excise taxes upon the sale of its storage batteries—an amount not included in the claim for refund filed by it in 1926, because then barred by the statute of limitations.

The plaintiff bases its case upon alternative theories, first, that the payment to it in 1935 was not income at all, but the restoration of a part of its capital which had been taken when the government, illegally, compelled it to pay the excise taxes in the years 1922 to 1926. Second, that, if income, it was properly accruable not for 1935 but for the years 1922 to 1926, and, consequently, the statute of limitations prevents assessment in 1935 of an additional tax in respect of it. Finally, the plaintiff contends that even if the assessment of the income tax in suit is held proper it is entitled to judgment by way of recoupment for the admittedly illegal excise taxes paid by it under protest between 1919 and 1922.

First. "The law is pretty well settled that * * * Refunds of taxes erroneously and illegally collected constitute taxable income. * * *" Universal, Inc., v. Commissioner, 7 Cir., 109 F.2d 616, 617. See also Nash v. Commissioner, 7 Cir., 88 F.2d 477 and Bimberg v. Helvering, 2 Cir., 126 F.2d 412. So far as I know, the rule

---

[1] All of it except the sum of $36,351.88 representing interest which the taxpayer admitted was earned from January 1, 1935, to September 15, 1935, and which it included in its report of its gross income for 1935.

[2] This was the amount of such taxes not passed on to the plaintiff's customers but absorbed by it.

of these cases has not been expressly rejected by any court decision.

The plaintiff contends that the payment of the excise taxes resulted in an impairment of its capital and that the exaction was in the nature of a trespass. The Board of Tax Appeals in a group of recently decided cases conceded as much but held that the subsequent refund was income, for the reason that "by the prior deduction of the amount of loss from taxable income the taxpayer has already had, for income tax purposes, a recoupment of the capital out of taxable income. Any further recovery is accordingly in the nature of a replacement of taxable income and, being in excess of the reduced cost of the capital asset, is equivalent to gain to the taxpayer." Estate of James N. Collins v. Commissioner, 46 B.T.A. 765, 769; John V. Dobson v. Commissioner, 46 B.T.A. 770. See also Houbigant, Inc., v. Commissioner, 31 B.T.A. 954. These cases held in effect that the money, upon its return, has lost its character as capital. This Court, in Philadelphia National Bank v. Rothensies, 43 F.Supp. 923 (a recovery of a bad debt case), took a somewhat different view and held that, although the money taken by the government remained capital even upon its return, the taxpayer, by claiming and receiving a benefit in respect of the loss in the form of a deduction in its income tax, had voluntarily consented that it be taxed as income in the event of its return, regardless of its nature. It does not matter which theory be accepted; whether the recovery be taxable as income or, by waiver or implied consent as capital, the result is the same.

Second. The refund being taxable income, the question is as to the year in which it is properly accruable. Judge Hand in Bimberg v. Helvering, supra, called attention to the distinction recognized by a number of decisions between situations in which the statute had run against assessment in the year of .the illegal overcharge and those in which it had not. He said [126 F.2d 413]: "It has been several times held that the Commissioner may cancel a deduction taken in one year for a tax which the taxpayer has accrued or paid, when the tax has been refunded in a later year because it was unlawfully imposed. Inland Products Co. v. Blair, 4 Cir., 31 F.2d 867; Leach v. Commissioner, 1 Cir., 50 F.2d 371; Bergan v. Commissioner, 2 Cir., 80 F.2d 89. * * * On the other hand, in several cases when the time has passed to assess a deficiency for the earlier year, courts have allowed the Commissioner to surcharge the income for the year of the refund. Houbigant, Inc., v. Commissioner, 2 Cir., 80 F.2d 1012; Nash v. Commissioner, 7 Cir., 88 F.2d 477; Union Trust Co. v. Commissioner, 7 Cir., 111 F.2d 60." In Bohemian Breweries v. U. S., 27 F.Supp. 588, 592, 89 Ct.Cl. 57, the Court of Claims referred to, as established, "the rule that an amount deducted and allowed from income in a certain year must be included in income when collected or recovered in a subsequent year when the correction of the return and the tax liability in a prior year is barred by the statute of limitation." Bimberg v. Helvering, supra, was a case in which, although the statute had not run, the Commissioner's determination that the refund was income for the year in which it was received was sustained, mainly because the taxpayer itself had accrued it for that year by returning part of it, but the opinion goes beyond the facts and expressly approves.the rule of the Houbigant case to the effect that if the statute has run the refund may be assessed against the taxpayer in the year in which it was received.

Although, in this case, the plaintiff's accounting was at all times upon an accrual basis,[3] that does not mean that the plaintiff may attribute an item of income to any year it pleases or that its determination of

---

[3] In the stipulation, filed in the suit for recovery of the excise taxes, there is a paragraph to the effect that the plaintiff "filed its corporation income tax returns for the calendar years 1922 to 1926, inclusive, upon a cash receipts and disbursements basis * * *." I cannot agree with the defendant that this estops the plaintiff to prove, in this case, that the fact was otherwise. Not only was this part of the stipulation immaterial to the decision of that case, but I find that it was a pure oversight and inadvertently made by counsel. The stipulation contained a number of other matters of vital importance to the case, including a lot of figures which required careful checking. The trial was in progress when the stipulation was submitted and, except for the figures, was gone over rather hurriedly and the paragraph in question was obviously overlooked. Admissions of counsel inadvertently made will not be permitted to defeat a party's rights. Nesbitt, Assignee, Appellant, v. Turner, 155 Pa. 429, 26 A. 750. The paragraph in question will not be treated as an estoppel nor as res adjudicata in the present case.

the year is final and conclusive. The question still remains whether the income is properly and legally accruable in the year to which the taxpayer has attributed it.

In each of the two recent cases of Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, and Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, the taxpayer was on an accrual basis. In the Dixie Pine case the taxpayer had been assessed for and had paid a manufacturer's gasoline tax to the state of Mississippi upon a product which it claimed was not gasoline and had brought suit in the state court to recover the payment. It accrued the liability on its books for the year in which it had paid the tax and claimed a corresponding deduction from its income tax for that year. The court said [320 U.S. 516, 64 S.Ct. 365]: "Here the taxpayer was strenuously contesting liability in the courts and, at the same time, deducting the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability. This it could not do. It must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated." In the Security Flour Mills case the taxpayer had not actually paid but had deposited, pendente lite, a processing tax the legality of which it was contesting. Meanwhile it had passed the tax on to its customers thereby assuming an obligation to reimburse them if the tax should be declared invalid. The tax was declared invalid, the impounded money was returned to the taxpayer and thereafter, in subsequent years, refunds were made to the customers. In spite of the fact that the taxpayer accrued the amount deposited as a liability for the year in which it was deposited, the court held that it was not entitled to a deduction for that year but must include in its income the total amount received from its customers in that year and take whatever deductions it was entitled to during the years in which refunds to the customers were made. The court said [321 U.S. 281, 64 S.Ct. 598]: "Since it denied liability for, and failed to pay, the tax during the taxable year 1935, it was not in a position in its tax accounting to treat the Government's claim as an accrued liability. As it admittedly received the money in question in 1935 and could not deduct from gross income an accrued liability to offset it, the receipt, it would seem, must constitute income for that year."

In the Security Flour Mills case the court further said: "The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount." The question in the present case therefore is, in what year had the plaintiff's right to receive a refund of the excise tax which it illegally paid, become "final and definite in amount"? Obviously, under the rule of the two cases just cited, not in the years 1922 to 1926, during which the tax was paid. It is also plain from those decisions that the fact that the exaction was subsequently determined to be illegal did not mean that there had been from the moment it was paid an immediate final and definite obligation to return it or a correlative right to receive it,—at least so far as allocating income or outgo in respect of it is concerned.

In its suit for the recovery of the excise taxes the plaintiff obtained judgment in 1933, but neither party in this case contends that the amount of the judgment is income for that year. Perhaps under ordinary circumstances it would be, but a special situation existed which, the defendant contends, and I think rightly, postponed the finality and definiteness of the taxpayer's right to receive and the government's obligation to pay the money until the year 1935 when all disputed questions were settled by agreement and payment was finally made.

In the suit to recover the excise taxes both this Court and the Circuit Court of Appeals had ruled that the plaintiff did not have to prove as a substantive element of its right to recover that it had not directly or indirectly passed on the tax to purchasers of its storage batteries, and the evidence did not show what part, if any, of the tax had been so collected from its customers. Subsequently in U. S. v. Jefferson Electric Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859, the Supreme Court held that this view was wrong, disapproving of the decisions of this Court and the Circuit Court of Appeals in that respect by specific reference to them. After this plaintiff's judgment was obtained the Commissioner contended

that, under the rule of U. S. v. Jefferson Electric Co., supra, not only had it been rendered upon an erroneous theory but that the court was without jurisdiction, and declined to pay it. Negotiations followed in the course of which the plaintiff satisfied the Commissioner as to how much of the tax it had passed on to its customers, and agreed that that amount would be deducted from the judgment. This controversy was not settled until 1935, and then the judgment, so reduced, was paid.

I do not think it necessary to pass upon the defendant's present contention that the judgment was merely what it calls, a "purported" judgment—no judgment at all, not a final or binding adjudication. The fact remains that, after its rendition, the Commissioner still contested, in good faith, the plaintiff's right to recover the full amount of the judgment and the plaintiff, for purposes of settlement and to obtain its money, apparently conceded at least that the Commissioner's position had some substantial merit, for it reduced its claim accordingly. Under these circumstances I think that the Government's contention is correct that the judgment lacked that absolute quality which would justify its accrual in any year prior to the final settlement of all controverted questions relating to the claim and that was the year in which payment was made.

Third. I think that the plaintiff is entitled to recoup against the deficiency assessment involved in this suit, the amount of excise tax illegally collected from it between 1919 and 1922.

 Equitable recoupment is a rule of the law which diminishes the right of a party invoking legal process to recover a debt, to the extent that he holds money or property of his debtor, to which he has no moral right. Ordinarily a defensive remedy going only to mitigation of damages, it will be applied in favor of a taxpayer who has brought suit to recover an alleged overpayment of tax exacted by summary procedure or the threat of it. Bull v. U. S., 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421.

In this case the government has money which it collected illegally from this taxpayer, against its protest, and which it has no right to retain. Only the statute of limitations stands in the way of the taxpayer's right to recover and the statute of limitations is not exactly a moral value. The rights and wrongs of the situation might be more complicated if the taxpayer's main contention was to be sustained, because then it would be retaining a tax benefit which only an erroneous guess as to the law by the Commissioner put into its pocket and of which only the statute of limitations prevented the collection; but as it is, apart from technical considerations, the equities are so plain as to admit of no disagreement among just and reasonable men. Every consideration of fair dealing demands that the taxpayer be credited as against its present liability with the taxes which it has been illegally compelled to pay, and I think that the decisions of the courts fully justify such a solution.

 The defendant contends that the plaintiff can have no right to recoupment in this case for two reasons. The first is that recoupment lies only in respect of a claim arising from the same transaction as that which is the basis of the adverse claim. That the two transactions must bear some reasonably definite relation to each other is recognized in all the decisions. Here the question is whether the illegal assessments of excise taxes for the years 1919 to 1922 bear a sufficiently close relation to the subject matter of this suit, namely, the refund of illegal assessments and collections of taxes imposed under the same statute upon articles of the same description in subsequent years, to allow the application of the doctrine. The case of Dixie Margarine Co. v. Commissioner, 6 Cir., 115 F.2d 445, 447, is on all fours with the present case and rules that it does. The court, in that case, said "the claim for refund and the deficiency assessment had a common origin, namely, the erroneous application of the Oleomargarine Act to petitioner's product, and petitioner's claim is therefore available in recoupment." Here the erroneous application of the Revenue Act to the plaintiff's product (storage batteries) gave rise to overpayments of 1919 to 1922, the refunds for 1922 to 1926 and the deficiency assessment for 1935 when the illegal exactions were restored. Dixie Margarine Co. v. Commissioner, supra, is a ruling by the Circuit Court of Appeals for the Sixth Circuit and, while not absolutely binding upon this court, ought to be followed unless it appears to be clearly erroneous. Far from that, it appears to be directly in line with the trend shown by the decisions of the Supreme Court in Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, Bull v. U. S., supra, and Stone

v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L. Ed. 1265, each of which marked a broadening of the scope of the doctrine and a step away from technical limitations upon it.

The other ground upon which the defendant denies the applicability of the doctrine of recoupment is the holding of McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 to the effect that the limitation sections of the Revenue Act of 1928 preclude it. In that case the applicable sections were 607 and 609(a), 26 U.S.C.A. Int.Rev.Acts, pages 459, 460, in the present case, 609(b), but the distinction is immaterial.

Since the plaintiff can exercise the right of recoupment if no statutory provisions preventing it are applicable (American Light & Traction Co. v. Harrison, 7 Cir., 142 F.2d 639), and since McEachern v. Rose, supra, holds that the limitation provisions of the Revenue Act of 1928, so far as applicable, do impose a bar, the only question is whether those provisions are retroactive, because, in the present case, the overpayments were made long before the Act of 1928. The precise point was decided by the District Court in West Virginia Pulp and Paper Co. v. McElligott, 40 F.Supp. 765, 771. The court said: "A consideration of this policy seems to indicate that Sections 607 and 609(a) should not be construed to have the retroactive effect of taking away the equitable defense of recoupment as applied to claims for refund of taxes assessed and paid before the enactment of those sections, which defense would otherwise be available." The defendant says simply that the West Virginia Pulp and Paper case is wrongly decided, and that both its rule and the plaintiff's position in the present case are clearly erroneous in that both are based on the proposition that recoupment is a substantive right whereas the defendant apparently considers it merely a procedural device. However, I think that it is a substantive right and I believe I may invoke the authority of Mr. Justice Roberts who said in Bull v. U. S., supra [295 U.S. 247, 55 S.Ct. 701, 79 L.Ed. 1421]: "This procedural requirement does not obliterate his substantial right to rely on his cross-demand for credit of the amount which, if the United States had sued him for income tax, he could have recouped against his liability on that score." At any rate I agree that the Revenue Act of 1928 should not be construed retroactively and does not take away the right of recoupment which the plaintiff in this case otherwise has. In his dissenting opinion in American Light & Traction Co. v. Harrison, 7 Cir., 142 F.2d 639, 645, Judge Evans came to the conclusion that the Section 820(f) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 3801(f), "No adjustment shall be made under this section in respect of any taxable year beginning prior to January 1, 1932." had not enlarged or lessened any right which accrued before January 1, 1932, and it will be noted as to this point he was not dissenting to anything said in the majority opinion. As to this, I am also in accord.

The plaintiff concedes that, if it is accorded recoupment, the government is entitled to a corresponding right to recoup the amount of income taxes and interest saved by the plaintiff during the years 1922–1926 together with the benefit received by the plaintiff in the saving of income taxes and interest during the 1919–1922 period. However, after allowing this and striking a balance, the government will still have in its hands more than the amount of taxes and interest which the plaintiff is endeavoring to recover in this suit.

Judgment may be entered for the plaintiff in the amount claimed.

### Findings and Conclusions

I adopt, as special findings of fact, the facts in the stipulation or "Agreed Statement of Facts" filed by the parties.

I affirm all of the plaintiff's requests for findings of fact, all of which, except Nos. 4, 20, 21, 22 and 23, are based upon the stipulation.

I affirm all the defendant's requests for findings of fact except No. 9 which is denied as stated.

I affirm the plaintiff's requests for conclusions of law Nos. 5, 6, 7 and deny Nos. 1, 2, 3 and 4.

I affirm defendant's requests for conclusions of law No. 1 and deny Nos. 2 and 3.

Judgment accordingly.