## LEACH v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2522.

Circuit Court of Appeals, First Circuit.

May 28, 1931.

O. Walker Taylor, of Boston, Mass., for petitioner for review.

Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch, Andrew D. Sharpe, and John G. Remey, Sp. Assts. to Atty. Gen., and C. M. Charest, General Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the Commissioner.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals, sustaining the Commissioner of Internal Revenue in his determination of deficiencies in the petitioner's income taxes of $7,133.45 for 1921, and of $1,823.09 for 1922.

The questions are: (1) Whether the board erred in holding the petitioner not entitled to deduct $50,000 of an estate tax until 1922; (2) in holding that her deduction for 1922 should be reduced by the amount of the refund of estate taxes, received in 1928.

The material facts are as follows:

The petitioner, of Taunton, Mass., was the sole beneficiary under the will of her father, William E. Walker, who died on November 9, 1918. The petitioner's husband duly qualified as executor of that estate; and on May 8, 1919, filed an estate tax return, and paid, on November 3, 1919, the tax, thus shown, of $37,700.68. On November 14, 1919, he transferred to his wife the entire balance of the estate, receiving from her an undertaking to hold him, as executor, harmless from any further claim for taxes and debts.

On April 14, 1921, the commissioner determined a deficiency in the estate tax of $79,759.16, above the $37,700.68 previously paid. On a claim for abatement and after some negotiation, it became evident that this deficiency would be reduced to an amount somewhat in excess of $50,000. Thereupon the petitioner, on December 5, 1921, drew her check to the collector for $50,000, in order to reduce, pro tanto, the accrual of interest, at 10 per cent. on the deficiency. This check was actually delivered and accepted by the collector on February 21, 1922. The estate-tax deficiency was, on March 18, 1922, determined to be $52,034.98 instead of $79,759.16.

and the unpaid balance, with interest, aggregating $6,017.40, was paid on March 27, 1922.

In making her individual income tax return for 1921, the petitioner deducted from her gross income $50,000; and in 1922, deducted $6,017.40. In 1928 the executor recovered judgment against the government on account of the above deficiency in the estate tax for $60,329.32, of which $43,865.30 was for excess estate taxes paid, and $16,463.95 for interest on such refund.

Petitioner's contention of a right to deduct from her income for 1921 the $50,000, for which she had drawn her check on December 5, 1921, cannot be sustained. She kept her accounts upon the basis of cash received and disbursed. The $50,000 was not actually paid until February 21, 1922. While, under section 214 (a) (3) of the Revenue Act of 1921, 42 Stat. 227, 239, it is provided that, "For the purpose of this paragraph estate  *  *  *  taxes *accrue on the due date thereof* except as otherwise provided by the law of the jurisdiction imposing such taxes," this provision must be construed with section 200, entitled "Definitions" where paragraph (4) reads:

"(4) The term 'paid,' for the purposes of the deductions and credits under this title, means 'paid or accrued' or 'paid or incurred,' and the terms 'paid or incurred' and 'paid or accrued' *shall be construed according to the method of accounting upon the basis of which the net income is computed under section 212.*" (Italics supplied.)

Compare United States v. Mitchell, 271 U. S. 9, 12, 46 S. Ct. 418, 70 L. Ed. 799. See, also, United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347. United States v. Woodward, 256 U. S. 632, 41 S. Ct. 615, 65 L. Ed. 1131, is plainly not in point.

■ Parenthetically, we assume in the petitioner's favor that an actual tender of the $50,000 in 1921 would operate pro tanto to prevent the running of interest at 10 per cent. and would make the later payment effective as of December, 1921. But there is and can be no serious contention of a valid tender in December, 1921. The taxpayer's attorney simply took the check to the commissioner's office, on December 17, 1921; stated that he came "to pay this on account of that $50,000 odd, settlement"; that he was asked if he had any letter from Washington relative to the matter; that he said no; that it was stated to him that "they expected it most any time"; "to hold up on the check a few days, which he did," taking the check back to Taunton and keeping it in his safe until February 21, 1922, when he again took it to the commissioner's office and left it. He testified "that if he had known as much in December as he did in February, he would have insisted on leaving the check there."

■ The petitioner also complains that the board erred in determining the amount of her income tax for 1922. The board held her gross income for 1922 reducible by $8,169.68 —the difference between the estate tax paid in that year—$52,034.98, and $43,865.30 of such tax, recovered in 1928.

The petitioner's counsel contends that this recovery in 1928 should be treated like a debt charged off as bad and subsequently recovered, under article 331 of Regulation 74. But the board (and we think properly) held this point ruled by Inland Products Company v. Commissioner, 10 B. T. A. 235, affirmed by the Circuit Court of Appeals for the Fourth Circuit, 31 F.(2d) 867, 868. That case involved, as does this, an erroneous payment of taxes. The fact that in the instant case there was enforceable remedy makes no difference as to the year to which the repayment should be applied. In that case the court said:

"But money erroneously paid to the government as taxes is not in any true sense a loss, and is not to be treated as such."

■ There is no merit in the contention that the petitioner should be permitted to deduct from her income tax for 1922 the sum of $3,982.42 paid by her in that year as interest on the estate tax; for the 1928 recovery included $16,463.95 as interest, besides the principal (above stated) of $43,865.30.

■ The petitioner also contends that the reduction of $43,865.30 should be diminished by the amount paid as attorneys' fees and expenses in the litigation for its recovery, to $22,435.68. We know of no authority warranting us in holding that attorneys' fees and expenses, incident to the recovery of taxes erroneously assessed, may, either directly, or indirectly by set-off, be charged against the government.

The decision of the Board of Tax Appeals is affirmed.