### COMMISSIONER OF INTERNAL REVENUE v. CENTRAL UNITED NAT. BANK.

#### No. 7487.

Circuit Court of Appeals, Sixth Circuit.

Nov. 9, 1938.

A. F. Prescott, Jr., of Washington, D. C. (Robert H. Jackson, Sewall Key, and Howard P. Locke, all of Washington, D. C., on the brief), for petitioner.

Orville Smith, of Cleveland, Ohio (Carmi A. Thompson, Orville Smith, and Jos. B. Shepler, all of Cleveland, Ohio, on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, *Circuit Judge.*

The Commissioner of Internal Revenue made a deficiency assessment of income taxes against respondent for the years 1929 and 1930 in the amounts of $10,131.52 and $8,620.76, respectively. The Board of Tax Appeals decided that no deficiency existed for the year 1929, and that there was an overpayment of $1,310.45 for the year 1930. This petition was filed to review the decision of the Board. The facts were stipulated.

Respondent is a national bank located at Cleveland, Ohio. It kept its books and filed its returns on the accrual basis of accounting. It accrued and claimed as deductions for the calendar years 1928, 1929 and 1930, the amounts of personal property taxes charged against it on the County Treasurer's duplicate of Cuyahoga County, Ohio, as follows:

| "Year | Original Assessment |
| --- | --- |
| 1928 | $116,083.23 |
| 1929 | 153,507.89 |
| 1930 | 165,520.15" |

These amounts were not paid at the end of the respective calendar years but the deductions therefor were allowable and taken for each year under Revenue Act of 1928, Ch. 852, § 23, 45 Stat. 791, 26 U.S.C.A. § 23 note, which provided that, "in computing net income there shall be allowed as deductions * * * (c) Taxes generally. Taxes paid or *accrued* within the taxable year * * *." (Italics ours.)

This controversy arose out of certain subsequent events.

On August 5, 1929, respondent filed a bill in equity against the Treasurer of Cuyahoga County, seeking to enjoin the collection of the taxes assessed against it for the year 1928, upon the theory that it had been discriminated against in the assessment as between it and other moneyed capital coming into competition with it, in violation of Revised Statute Sec. 5219, as amended, 12 U.S.C., Sec. 548, 12 U.S.C.A. § 548. A stipulation was filed whereby the prosecution of the case was deferred, pending a decision in a similar case in the District Court for the Southern District of Ohio, brought by the Huntington National Bank and involving the same question. Respondent's suit was dismissed without prejudice on February 26, 1931.

On May 1, 1931, respondent brought a second suit against the Treasurer seeking to restrain him from collecting the taxes assessed against it for the years 1928, 1929 and 1930, upon the same grounds upon which it had sought relief in the first suit. Even before the second suit was filed and prior to the decision of the District Court in the Huntington Case negotiations were carried on looking to a full settlement of the controversies. The Huntington Case was decided on November 7, 1930 [Commercial Natl. Bank v. Treasurer of Franklin County, D.C., 45 F.2d 213], and it was held therein that personal property taxes against national banks in Ohio were illegally assessed because of discrimination. The case was appealed to this court and the decree reversed. Hoenig v. Huntington Natl. Bank, 6 Cir., 59 F.2d 479.

But before the Hoenig Case was decided respondent had reached a compromise with the taxing officials by the terms of which it was to pay $46,433.29 upon the assessment for 1928, $61,403.16 upon that for 1929, and $82,760.07 upon that for 1930. This compromise was made the basis of a decree in the second suit above mentioned wherein the County Treasurer was required to accept the above specified amounts in full settlement of the taxes payable for the several years; and payment pursuant to the compromise was made on February 1, 1932.

In its tax return for the year 1932, respondent reported as income the sum of $244,514.75, being the amount it had saved by the settlement. The Commissioner held that this could not be done and readjusted respondent's returns for the years 1929 and 1930, so as to allow deductions only for the

amounts actually paid out by respondent in taxes for those years.

Whether the Commissioner's action was proper is the question here. We concur in the conclusion of the Board that it was not.

Petitioner insists that his action was authorized because the result more clearly reflected respondent's income for the years involved. See United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347. But the difficulty is that before the end of the taxable years 1929 and 1930, all the events which rendered respondent liable for the full amount of the taxes claimed as deductions had occurred. United States v. Anderson, supra; Hoenig v. Huntington Natl. Bank, supra; Bauer Bros. v. Commr., 6 Cir., 46 F.2d 874, 875. The taxes were valid obligations and correct and certain in amounts and had been properly assessed; and respondent was entitled to accrue them and to take the deductions therefor under the Revenue Act of 1928, Ch. 852, Sec. 23, 45 Stat. 791, quoted above. The fact that it thereafter brought suit to restrain the collection of the taxes in no wise affected their validity or its legal obligation to pay them.

In 1932 respondent effected a compromise payment of its taxes for 1929 and 1930, in an amount much less than their face value; but we find nothing in this fact to authorize a proportionate scaling down of the deductions to which it was entitled under the law for those years. The natural and logical procedure in such a situation would be to require respondent to return the savings as income in the year in which they were effected and this it did. See North American Oil Consol. v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197.

Petitioner relies upon the following cases: Inland Products Co. v. Blair, 4 Cir., 31 F.2d 867; Leach v. Commr., 1 Cir., 50 F.2d 371, and Bergan v. Commr., 2 Cir., 80 F.2d 89.

In the Blair Case there was an erroneous assessment and payment of taxes, and the court held that the taxpayer could not take deductions therefor after the illegal taxes had been refunded.

The question in the Leach and Bergan Cases was similar to that in the Blair Case. It has but little analogy to the issue here.

The order of the Board of Tax Appeals is affirmed.