## BALTIMORE & O. R. CO. v. MAGRUDER, Collector of Internal Revenue.
### No. 1950.

District Court, D. Maryland.
April 1, 1948.

Hershey, Donaldson, Williams & Stanley, of Baltimore, Md. (John S. Stanley and D. Heyward Hamilton Jr., both of Baltimore, Md., of counsel), for plaintiff.

Theron Lamar Candle, Asst. Atty. Gen., Andrew D. Sharpe and Arthur L. Jacobs, Sp. Assts. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and Anthony Purcell, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a suit for the recovery of income taxes for the year 1936, claimed by the plaintiff to have been improperly assessed by reason of the fact that the Commissioner of Internal Revenue disallowed a certain deduction from income which the plaintiff took in its income tax return for that year.

The jurisdiction of this Court is based upon Section 24(5) of the Judicial Code, 28 U.S.C.A. § 41(5). The plaintiff filed a motion for summary judgment on the ground that there is no genuine issue as to any material fact and that plaintiff is entitled to a judgment as a matter of law. Thereafter, the defendant filed a motion for judgment on the pleadings on the ground that the complaint fails to state a claim upon which relief may be granted. The case is now before the Court on these motions.

The material facts as disclosed by the pleadings, and also by stipulations and admissions resulting from a pretrial conference, are the following:

The Carriers' and Employees' Tax Act of 1935, c. 813, 49 Stat. 974, required all interstate carriers to pay an excise tax of 3½% of the compensation not in excess of $300 per month paid by them to their employees after the effective date of the Act, March 1, 1936, until its expiration date, February 28, 1937. However, Congress extended the expiration date to June 30, 1938, 50 Stat. 23.

On January 6, 1936, most of the railroads throughout the country, including the present plaintiff, the Baltimore & Ohio Railroad Company, joined in the institution of a suit in the District Court for the District of Columbia against the Railroad Retirement Board and others, claiming that the Carriers' Taxing Act of 1935 was unconstitutional. A number of railroad employees were permitted to intervene in this suit as parties plaintiff.

On June 26, 1936, the District Court rendered an opinion holding the Act unconstitutional, Alton R. Co. v. Railroad Retirement Board, D.C., 16 F.Supp. 955, and on June 30, 1936, entered its final decree giving effect to this decision. On July 17, 1936, the defendant took an appeal, but on June 29, 1937, before the appeal was heard by the Court of Appeals for the District of Columbia, Congress passed the

Carriers' Taxing Act of 1937, c. 405, 50 Stat. 435, 45 U.S.C.A. § 261 et seq., which, according to its express terms, supplanted the Carriers' Taxing Act of 1935, and provided (Section 11) that "All moneys payable as and for taxes under said Act of August 29, 1935, and not heretofore paid shall cease to be payable and all proceedings pending for the recovery of any such moneys shall be terminated."

In view of this repeal of the 1935 Act by the 1937 Act, the Court of Appeals for the District of Columbia directed the District Court to dismiss the suit since it had become moot. This was done. Thereupon, the Internal Revenue Bureau, on August 6, 1937, issued its Income Tax Ruling No. 3116, 1937—2 Cum.Bull. 90, with respect to the treatment of amounts accrued and claimed as deductions for taxes under the 1935 Act by carriers in their income tax returns for 1936. This ruling provides as follows:

"(a) In those cases in which the carriers' excise tax was paid by the carrier prior to the enactment of the Carriers Taxing Act of 1937, the deduction claimed therefor in the income tax return of the carrier for the calendar year 1936 will be allowed and refunds of such tax will be required to be included in the gross income of the carrier for the year in which the refund is made.

"(b) In those cases in which the carriers' excise tax was not paid to the collector *and the carrier was not a party to the suit under the Carriers Taxing Act of 1935, or did not otherwise contest liability for such tax,* the deduction claimed therefor in the income tax return of the carrier for the calendar year 1936 will also be allowed and the amount of the tax will be included in the gross income of the carrier for the year in which the liability for the tax was extinguished, that is, for the calendar year 1937.

"(c) In those cases in which the carriers' excise tax was not paid to the collector *and the carrier was a party to the suit under the Carriers Taxing Act of 1935, or otherwise contested liability for such tax,* the deduction claimed therefor in the income tax return of the carrier for the

calendar year 1936 will be disallowed and no adjustment of the income tax return of the carrier for the calendar year 1937 will be made on account of the extinguishment of the carrier's liability for the tax." (Emphasis supplied.)

From March 1, 1936, and for the balance of that year, the Railroad Company accrued on its books the tax imposed upon it by the Act of 1935, that Act being in force from its effective date, March 1, 1936, throughout the remainder of that year, although the Railroad Company was attacking its constitutionality by participation in the litigation, above referred to, from January, 1936, throughout the remainder of that year and until that Act was supplanted on June 29, 1937, by the 1937 Act. The Railroad Company never filed any returns under the 1935 Act.

On or about March 15, 1937, the Railroad Company filed its consolidated corporation income and excess profits tax return for the calendar year 1936, computed upon an accrued basis. This return showed a deficit in normal tax income but a surtax net income upon which it computed an undistributed profits tax of approximately $93,-000. This was paid in due course in four installments. In this return, the Railroad Company entered, as a deduction from gross income, accrued taxes under the Carriers' Taxing Act of 1935 in the sum of $2,525,-543.91.

On May 12, 1938, the Railroad Company duly filed a claim for refund of the undistributed profits tax which it had paid, as above explained, in the amount of $93,-000, basing this claim for refund on the ground that certain substantial deductions from its gross income for the year 1936 were allowable, the particular one being for increased sums for depreciation of rolling stock. The effect of the allowance of this latter claim, and also of the allowance of deduction for accruals of excise taxes under the 1935 Act as claimed in the Railroad's return, would be to wipe out all liability of the Railroad Company for the taxes it had paid pursuant to its return for the year 1936.

The Internal Revenue Bureau disallowed this claim for refund and as a result as-

serted there was due a large additional deficiency. That is to say, summarized briefly, and without reference to other items involved with which we are not here concerned, the Bureau ultimately claimed a tax deficiency of $190,396.27. This was paid to the Collector under protest by the Railroad Company and claims for its refund were duly filed with, but were rejected by the Collector. This suit was then brought for the recovery of the last mentioned amount.

Whether recovery should be allowed depends upon whether or not the Commissioner was correct in disallowing the deduction which the Railroad Company made in its return for the year 1936 from gross income in the amount of $2,525,534.91, representing accrued taxes under the 1935 Act. The Commissioner based disallowance upon the fact that the Railroad Company was embraced within the group of carriers as covered by paragraph (c) of Income Tax Ruling No. 3116, heretofore quoted, since the Railroad Company had been a party to the suit in which the validity of the 1935 Act had been contested, and that paragraph of the Ruling denied the deduction to carriers that had not paid the tax under the 1935 Act, and that had been parties to the suit to contest the Act's validity or had otherwise contested liability for such tax.

The applicable law is embraced in Section 23(c) of the Revenue Act of 1936, Act of June 22, 1936, c. 690, 49 Stat. 1648, 1658, 1659, 26 U.S.C.A. Int.Rev.Code, § 23(c), which provides, insofar as pertinent to the question before us, as follows:

"Sec. 23. In computing net income there shall be allowed as deductions:

     *     *     *     *     *     *

"(c) Taxes Generally. Taxes paid or accrued within the taxable year * * *."

Sections 41, 42 and 43 of the same Act, 26 U.S.C.A. Int.Rev.Code, §§ 41–43, contain provisions for tax accounting on the accrual basis if the taxpayer's books are kept on that basis, provided it clearly reflects the taxpayer's income for any taxable year.

The Collector relies directly upon Dixie Pine Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 420. The facts in that case are more akin to those in the present case than are the facts in any other de-

cision of the Supreme Court. However, it is claimed on behalf of the Railroad Company that there are sufficient factual differences to compel a different conclusion from that reached in the Dixie Pine Co. case.

The taxpayer in that case was engaged in Mississippi in the business of extracting turpentine, pine oil and resin from stumps and other waste wood. A quantity of solvent made from petroleum products was used in the process. In 1936 the taxing authorities of Mississippi, contending that the solvent was usable in the operation of automobiles, assessed a State gasoline tax on the solvent received and used by the Dixie Company in that year. The Company paid this tax, but in the same year brought suit against the Motor Vehicle Commissioner of Mississippi, alleging that the solvent was not embraced within the State law and that the Commissioner should be enjoined from future collections of the tax on this solvent. The Company lost in the lower court but on appeal to the Supreme Court of Mississippi that Court in January, 1937, held, on the pleadings, that the solvent was not embraced within the State statute and remanded the case to the lower court. As a result, the Dixie Company denied that it owed and refused thereafter to pay any gasoline tax on its solvent.

The Dixie Company had kept its books and filed its income tax return on the accrual basis for the year 1936. In December 1937, on advice of counsel, the Company made book entries accruing the gasoline tax assessed in 1937, the actual accrual entries being made between January 1 and March 15, 1938, as of December 31, 1937, and the amount of this accrual was deducted from the Company's income in making its 1937 income tax return, although this amount had not been, and never was paid.

In December 1938, the Dixie Company and the State of Mississippi filed an agreed statement of facts in the suit still pending in the lower State Court, and in the same month that Court entered a final decree perpetually enjoining the assessment of the tax against the Company on the solvent in question. This decree was affirmed by the Supreme Court of Mississippi in October, 1939. In its 1938 income tax return,

the Company, by way of compensating entry, included as income the sum in controversy which it had deducted as the accrued tax in its 1937 return. The Commissioner disallowed the deduction for the year 1937. His action was affirmed by the Board of Tax Appeals (45 B.T.A. 286) and the Circuit Court of Appeals for the Fifth Circuit affirmed the Board's decision (134 F.2d 273). The Company's petition to the Supreme Court for writ of certiorari was granted (320 U.S. 720, 64 S.Ct. 36, 88 L.Ed. 424) because, as stated by Mr. Justice Roberts in the Court's opinion (320 U.S. 516 at 518, 64 S.Ct. 364 at 365, 88 L.Ed. 270), "of a conceded conflict in principle with decisions in other circuits," these decisions being Commissioner v. Central United National Bank, 99 F.2d 568, and Davies' Estate v. Commissioner, 126 F.2d 294, both by the Sixth Circuit Court of Appeals, and J. A. Dougherty's Sons v. Commissioner of Internal Revenue, 121 F.2d 700, a decision of the Third Circuit Court of Appeals.

The opinion of the Tax Court in the Dixie Pine Co. case is embraced in one paragraph. The Board appears to have based its disallowance of the deduction on the ground of misapplication of the taxing act, namely, that it finally turned out that the tax was not due because, by its terms, it did not apply to the particular taxpayer. The Board said (45 B.T.A. 286 at page 289) : "It is not a case of an unconstitutional tax, but one of mistake in thinking that a taxing act applied to this petitioner. Inland Products Co., 10 B.T.A. 235 aff'd, [4 Cir.] 31 F.2d 867. Cf. Mary W. Leach, 16 B.T.A. 781; affirmed [1 Cir.] 50 F.2d 371. The tax was never due and the efforts to collect it were all a mistake, as the court finally decided the law did not apply. The Collector admitted his doubt after the decision on the demurrer. The petitioner, believing that no tax was due, ceased and refused to pay, and only made a closing accrual upon advice of counsel." The Circuit Court of Appeals, however, in affirming the Tax Board rested its conclusion specifically upon the fact that the liability was purely a contingent one. The Court said (134 F.2d 273 at page 275) :

"The decision of the Board is without error. During the whole of the tax year for which the right of deduction is asserted, Dixie Pine Products Company was denying liability for the State gasoline taxes, and was affirmatively litigating the applicability of the taxing statute to the solvent used by it. Indeed, when it stopped paying the taxes assessed against it by the Motor Vehicle Commissioner, it had won the first round of litigation in the Supreme Court of Mississippi.

"Returns of taxpayers, whether upon the cash or accrual basis, must clearly reflect the income of the tax year; and the great weight of authority is to the effect that where, as here, a taxpayer is on the accrual basis, it may not deduct as an expense an item on which it is denying or contesting liability.

\* \* \* \* \* \*

"The compensating entry made in 1938 by the petitioner does not preclude correction of the erroneous return for 1937. The correction, coming well within the limitation period, may be made so that the true income may be reflected for 1937. The taxpayer will, of course, have a claim for refund of any tax overpayment resulting from inclusion of the compensating entry in income of 1938. Ben Bimbert & Co. v. Helvering, 2 Cir., 126 F.2d 412; Leach v. Commissioner, 1 Cir., 50 F.2d 371; Bergan v. Commissioner, 2 Cir., 80 F.2d 89; Inland Products Co. v. Blair, 4 Cir., 31 F.2d 867."

In the Dixie Pine Co. case, after stating the facts and the applicable law, Mr. Justice Roberts condensed the Court's views into the two following paragraphs (320 U.S. 516 at pages 518, 519, 64 S.Ct. 364 at page 365) :

"The provisions of the Revenue Act of 1936 worked no significant change over earlier Acts respecting the permissible basis for calculating annual taxable income. The applicable principles of accounting on the accrual basis had been adduced and applied by the Board of Tax Appeals in numerous decisions. It has never been questioned that a taxpayer who accounts on the accrual basis may, and should, deduct from gross income a liability which really ac-

crues in the taxable year. It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer. Here the taxpayer was strenuously contesting liability in the courts and, at the same time, deducting the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability. This it could not do. It must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated.

"To this effect are the decisions of the Board of Tax Appeals in numerous cases, and the instant decision was in line with earlier rulings as to proper tax accounting practice. Since the Board applied the correct rule of law, its determination that the item in question was not properly deducted on the accrual basis is entitled to the finality indicated by Dobson v. Helvering, 320 U.S. p. 489, 64 S.Ct. 239 [88 L.Ed. 248]. The court below properly refused to disturb the Board's determination."

As we construe this holding of the Court, it embraces the three following propositions where the taxpayer's accounting is on the accrual basis: (1) A liability, to be legally deductible from gross income, must in fact accrue in the taxable year for which the deduction is made; (2) such accrual does not take place unless there had occurred in that year all the events which fix the taxpayer's liability for the indebtedness that has been deducted though not paid; and (3) as long as the taxpayer's liability is being legally adjudicated, it is not fixed but contingent, and he must await a final adjudication before he can claim a deduction based on such liability.

It seems to us that these are clear, inescapable conclusions to be reached from the language of the Court's opinion. If they are, then they require a finding by this Court that the Collector's ruling in the present case is correct, because the Railroad Company's liability to pay any taxes under the Taxing Act of 1935 was definitely still "contingent" during the taxable year 1936, within the meaning of that word as defined by the Supreme Court. During the first month of the taxable year, the constitutionality of the Taxing Act of 1935 was placed in litigation by the Railroad Company and other carriers. In June of the taxable year, the District Court held the Act unconstitutional. In July of the taxable year, this ruling was appealed, but before the appeal was heard, that is, eleven months later, in June 1937, Congress repealed the Taxing Act. Thus, it is indisputable that in the present case the Railroad Company's liability was being legally adjudicated throughout the entire taxable year 1936 for which the deduction is claimed, and that it was not until June 1937 that liability for the tax was finally determined to be non-existent, that is, by enactment by Congress of the substitute Carriers' Taxing Act of 1937.

The Railroad Company maintains nevertheless that the Supreme Court's decision in the Dixie Pine Co. case should not be treated as controlling here because, as is asserted, the two cases are distinguishable in at least four important factual respects, as follows:

(1) That, in the Dixie Pine Co. case, the action of the taxpayer directly resulted in its exoneration from liability for the tax; whereas in the present case, neither the Railroad's participation in, nor the outcome of the test case itself had any effect upon the Railroad Company's liability for the tax, since throughout the taxable year 1936 the Act remained in full force and effect, and the liability did not cease until Congress itself repealed the Act in 1937.

(2) That, in the Dixie Pine Co. case, the taxpayer, at all times throughout the taxable year, denied that the tax statute was applicable to it and for this reason, its liability was contingent all during the taxable year; whereas in the present case, the Railroad Company did not deny that the Taxing Act of 1935, by its terms, applied to it, but merely questioned its constitutionality.

(3) That, in the Dixie Pine Co. case, the taxpayer not only denied it was subject to

the taxing statute but also, after it had been successful in the State Supreme Court in January of the taxable year, the State tax officials admitted there was a question whether the tax was in fact due; whereas in the present case, the Commissioner of Internal Revenue has at all times taken the position that the Railroad Company owed the tax.

(4) That, in the Dixie Pine Co. case, there was totally lacking any element of compulsion to accrue the tax under the regulation of a governmental authority; that as a matter of fact, the accrual was not made in the regular course of business but was resorted to on advice of counsel, merely as a closing entry made in connection with the auditing and closing of the taxpayer's books for the taxable year; whereas in the present case the accrual was periodically made in compliance with the bookkeeping regulations imposed upon the Railroad Company by the Interstate Commerce Commission.

It is true that all of the aforegoing factual differences exist between the two cases. Indeed, the equities in favor of the taxpayer in the present case might appear to be stronger than in the Dixie Pine Co. case because of one of these differences, if not the others. We refer to the fact that the right to accrue in the present case did not depend, as it did in the Dixie Pine Co. case, upon applicability of the statute, but upon the statute's validity, and that the Board of Tax appeals (but not the Circuit Court of Appeals or the Supreme Court by any reference, expressed or implied) appears to have considered this distinction material, as evidenced by what the Board said in its opinion, which we have heretofore quoted, relying upon Inland Products Co. v. Blair, 31 F.2d 867, a decision of the Circuit Court of Appeals of this Circuit. This case held that where taxes had been voluntarily paid under the Revenue Acts of 1917 and 1918 and had been refunded in the subsequent year, the taxpayer could readjust his income tax returns so as to eliminate deduction claimed on account of such payment, instead of treating the latter as a loss, and its refund as income for the year in which refund was made. Nevertheless, *none* of the factual differences permits, we think, of a conclusion that during the taxable year 1936 the Railroad Company's liability for the tax here in dispute was other than contingent, unless we do violence to the clear language of the Supreme Court's decision in the Dixie Pine Co. case which we have hereinbefore minutely analyzed. If the taxpayer's liability for the tax is still undetermined, that liability is equally contingent whether disputed on the ground of invalidity of the tax or its lack of application to the particular taxpayer.

At this point it is appropriate to examine the three cases to which we have hereinbefore referred and which, as we have seen, since they conflicted in principle with the decision of the Circuit Court of Appeals for the Fifth Circuit in the Dixie Pine Co. case, caused the Supreme Court to grant certiorari in the latter.

In the earliest of these decisions, Commissioner v. Central United National Bank, supra (Circuit Court of Appeals for the Sixth Circuit), the taxpayer, a national bank, had brought a suit in 1929 against the Treasurer of Cuyahoga County, Ohio, to restrain collection of local taxes for the year 1928; and had brought another suit in 1931, to restrain collection of similar taxes for the years 1929 and 1930. The Bank reached a compromise settlement of both suits in 1931, and in 1932 reported, as income, the amount which it had saved by this settlement. The Commissioner of Internal Revenue held that this could not be done and readjusted respondent's returns for the years 1929 and 1930 so as to allow deductions only for the amounts actually disbursed by the Bank in taxes for those years. The Board of Tax Appeals reversed the Commissioner and the Circuit Court of Appeals affirmed. In its opinion the appellate court said (99 F.2d 568 at page 570):

"Whether the Commissioner's action was proper is the question here. We concur in the conclusion of the Board that it was not.

"Petitioner insists that his action was authorized because the result more clearly reflected respondent's income for the years involved. * * * But the difficulty is

162

that before the end of the taxable years 1929 and 1930, all the events which rendered respondent liable for the full amount of the taxes claimed as deductions had occurred. * * * The taxes were valid obligations and correct and certain in amounts and had been properly assessed; and respondent was entitled to accrue them and to take the deductions therefor under the Revenue Act of 1928, * * *. The fact that it thereafter brought suit to restrain the collection of the taxes in no wise affected their validity or its legal obligation to pay them.

"In 1932 respondent effected a compromise payment of its taxes for 1929 and 1930, in an amount much less than their face value; but we find nothing in this fact to authorize a proportionate scaling down of the deductions to which it was entitled under the law for those years. The natural and logical procedure in such a situation would be to require respondent to return the savings as income in the year in which they were effected and this it did. * * *"

Four years later in 1942, in Davies' Estate v. Commissioner, 126 F.2d 294, the Sixth Circuit Court of Appeals reaffirmed its decision in Central United National Bank case. In the Davies' Estate case, a taxpayer who kept his books on the accrual basis for the taxable year 1935, accrued the amount of processing taxes which at the same time he was legally contesting and which were falling due during certain months, under the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq. (which was ultimately declared unconstitutional by the Supreme Court, United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914), as shown by returns filed during such months. The taxpayer never paid these taxes. The Board of Tax Appeals denied the taxpayer's right so to accrue them. The Circuit Court of Appeals reversed the Board. The following paragraph from the opinion of the appellate court succinctly states its position (126 F.2d 294 at 296): "In Commissioner of Internal Revenue v. Central United National Bank, 6 Cir., 99 F.2d 568, 570, this court held that, where it appeared that events which rendered a taxpayer on an accrual basis liable for the full amount of taxes claimed

as deductions had occurred within the taxable years, the fact that the taxpayer brought suit to restrain collection in no wise affected the validity of the taxes or the legal obligation to pay them; and subsequent compromise of the taxes did not authorize the Commissioner of Internal Revenue to readjust the taxpayer's returns so as to allow deductions only of amounts finally actually expended by the taxpayer in taxes for the years involved. The same principle applies here. The fact that, in the one case, accrued taxes were compromised and, in the other, were held unconstitutional is deemed immaterial. In both cases, payment of the tax was resisted by the taxpayer."

Between the dates of these two decisions in the Sixth Circuit, the Third Circuit Court of Appeals, in J. A. Dougherty's Sons v. Commissioner, 121 F.2d 700, had rendered a similar decision which was relied upon in the Davies' Estate case.

In the Third Circuit case the Board of Tax Appeals was again reversed in a holding that accruals for Pennsylvania floor taxes made by a distillery company in the years 1935, 1936 and 1937 were proper when made and, as such, were deductible from gross income in the respective taxable years, even though the validity of the Pennsylvania floor tax act was litigated by the taxpayer and was later declared unconstitutional and the taxes were never paid.

These three decisions and their relation one to the other, may be summarized as follows: In the Central United Bank case, validity of the tax was involved, but there was a compromise settlement before validity was finally adjudicated and upheld; and both the Board of Tax Appeals and the appellate court were in agreement that the tax was deductible as it accrued. In the Davies case, the Board of Tax Appeals and the appellate court disagreed. Validity of the tax was also involved there. In that case, the Board relied upon its decision of the same year in the Dougherty case, but the Board's decision in the latter case was reversed by the Circuit Court of Appeals. In the Doughtery case, validity of the tax was also at issue. The basis of the Board's position in both the

Dougherty and the Davies cases was that deductions should not be allowed for accrued taxes which have been resisted, have never been paid, and have been declared unconstitutional prior to the filing of a petition by the taxpayer.

The distinction made by the Board of Tax Appeals in the earliest of these three cases, namely, the Central United Bank case, appears to have been between compromise of the tax and determination as to the validity of the tax. There is no reported opinion of the Board in this case. But, for the purposes of the present case, the important thing to note is that the Supreme Court, in the Dixie Pine Company case, has adopted unless we read into the definite, broad language of Mr. Justice Roberts' opinion, something which is not there, the conclusion of the Board of Tax Appeals in the two most recent of the three cases just analyzed, and has rejected the position of the appellate tribunal in all three of them. This has been done in spite of the fact that the Board, in its opinion in the Dixie Pine Co. case, specifically alluded to and distinguished the facts in that case from those dealt with in these two earlier cases, this opinion of the Board having been rendered prior to the reversal of the Board's opinion in the Davies case but not in the Dougherty case, the Board, in its opinion, making note of this reversal.

The concluding paragraph of the Court's opinion in the Dixie Pine Co. case [320 U.S.'519, 64 S.Ct. 365] immediately follows the statement that "It [the taxpayer] must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated." The concluding paragraph reads (320 U.S. 516 at page 519, 64 S.Ct. 364 at page 366): "To this effect are the decisions of the Board of Tax Appeals in numerous cases, and the instant decision was in line with earlier rulings as to proper tax accounting practice. Since the Board applied the correct rule of law, its determination that the item in question was not properly deducted on the accrual basis is entitled to the finality indicated by Dobson v. Helvering, 320 U.S. p. 489, 64 S.Ct. 239 [88 L.Ed. 248]. The court below

properly refused to disturb the Board's determination." Except for the statement that the Court's conclusion is in harmony with "the decisions of the Board of Tax Appeals in numerous cases," there is no other reference to these decisions. Also, it should be noted that Dobson v. Helvering, Commissioner, did not involve any such question as that now before us. The gist of that decision is that the Tax Court has the final word on factual issues, and review of its action on questions of proper income tax accounting was much restricted by this decision. But again we are impelled to say, in view of the definite, broad language of Mr. Justice Roberts' opinion in the Dixie Pine Co. case, that the conclusion is inescapable that the opinion affirms the position which the Board of Tax Appeals had taken in the Dougherty and Davies cases, because the decisions of the appellate courts in those cases were in conflict therewith and also in conflict with the decision of the Board of Tax Appeals and the Circuit Court of Appeals for the Fifth Circuit in the Dixie Pine Co. case, which conflict gave rise directly to the Supreme Court's granting certiorari in the latter case.

Thus, it follows that there is no basis for this Court to say, in the present case, that the Supreme Court in the Dixie Pine Co. case intended to make a distinction between accrual of a tax contested by the taxpayer on the ground of its inapplicability to him, and of a tax contested on the ground of invalidity—even though the Board of Tax Appeals did indicate there was a distinction, as we have seen from the language which the Board employed in its opinion in the Dixie Pine Co. case.

We believe what we have just stated is confirmed by the fact that a year after its decision in the Dixie Pine Co. case, the Supreme Court reaffirmed that decision in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, where the validity of a taxing statute was contested by the taxpayer while claiming the right to accrue deductions under it. There, a taxpayer, whose books were kept on the accrual basis, made sales of flour in 1935 at prices which included an amount sufficient to cover the processing tax levied

164

under the Agricultural Adjustment Act of 1933. In the same year the taxpayer obtained a temporary injunction against collection of the tax, on condition that the amount thereof be deposited pendente lite. In 1936 the Supreme Court declared the taxing provisions of the Agricultural Adjustment Act unconstitutional. United States v. Butter, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. The Court held in the Security Flour Mills Co. case, Mr. Justice Roberts delivering the opinion of the Court, that payments made by the taxpayer in the years 1936, 1937 and 1938 to reimburse customers for the amount of the tax on such sales, were not deductible from gross income for 1935. In so deciding, Mr. Justice Roberts said (321 U.S. 281 at page 284, 64 S.Ct. 596 at page 597):

"It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent, and this principle is fully applicable to a tax, liability for which the taxpayer denied, and payment whereof he is contesting. Here the petitioner, in figuring its costs and its sales price to consumers, added the amount of the processing tax, but it collected its purchase price as such and designated no part of it as representing the tax. The petitioner received the purchase price as such. Its tax liability, if any, to the United States did not differ from other debts. Since it denied liability for, and failed to pay, the tax during the taxable year 1935, it was not in a position in its tax accounting to treat the Government's claim as an accrued liability. As it admittedly received the money in question in 1935 and could not deduct from gross income an accrued liability to offset it, the receipt, it would seem, must constitute income for that year."

Appended to the first sentence above quoted from the Court's opinion is the following footnote: "See Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364 [88 L.Ed. 420], where this rule of law was reaffirmed and applied by the Board of Tax Appeals, the Fifth Circuit Court of Appeals, and by this court, and cases cited."

In view of the foregoing, Atlanta B. & C. R. Co. v. Forrester, 69 Ga.App. 369, 25 S.E.2d 581, a decision upon which the Railroad Company in the present case most strongly relies as supporting its position, rendered by the Court of Appeals of Georgia in 1943, must also be treated by this Court as impliedly disapproved by the Supreme Court because rendered prior to and in direct conflict with the Dixie Pine Co. and Security Mills Co. cases.

In this Georgia case, the factual situation was quite similar to that in the present case. There, the interstate railroad, just as the Baltimore & Ohio Railroad in the present case, computed its income by the standards prescribed by the Interstate Commerce Commission on an accrual basis, and on this basis, filed its income tax returns to the State of Georgia for the year 1936, as well as subsequent years. During 1936, the railroad accrued on its books, as a liability, amounts necessary to enable it to pay the Federal tax imposed by the Railroad Retirement Act of 1935, 45 U.S.C.A. §§ 215–228, this being the amount apportioned to the State of Georgia from the road's interstate operations. At the same time, this railroad, together with others, filed a suit to enjoin the enforcement of this Act on the ground that it was unconstitutional, but before the case was decided the Act was repealed, that is, in 1937, and the tax which had accrued thereunder was remitted and returned as income by the railroad for the year 1937. The State Tax Commissioner ruled that this could not be done, and the railroad brought suit against him to recover income taxes alleged to have been erroneously assessed and collected for the year 1936 by reason of this ruling. The lower court gave judgment for the Commissioner, but on appeal the Court of Appeals of Georgia reversed the lower court. In a very forceful opinion, the appellate court states its reasons as follows (69 Ga. App. 369, 25 S.E.2d 581 at page 584):

"In this case the amount of the tax was definite and certain, and everything necessary had been done to fix the tax and the taxpayer's liability. Whether the tax was due, or whether the amount was proper, did not depend on an unsettled question of fact, or application of law to facts not certain. Whether the tax was due or not could not be affected by any attitude or

contention of the taxpayer. It either owed the tax or it didn't. If the suit to enjoin the tax by the railroad had prevailed there would have been no proper accrual. If the suit had been lost by the railroad and the tax held constitutional the tax would have been valid from the beginning and not from the time it was held to be constitutional. The same result obtains upon the repeal of the tax, which made the constitutional question moot.

"The only case in point which we have found is in accord with this ruling. In Commissioner of Internal Revenue v. Central United Nat. Bank, 6 Cir., 99 F.2d 568, it was held that the taxpayer could accrue the liability for taxes despite the fact that it brought suit to restrain the collection, and that the suit in no wise affected the validity of the taxes or the taxpayer's obligation to pay them. In that case the taxpayer was permitted to accrue taxes for the years in which they were due, and to accrue as income in a subsequent year the amounts saved in a compromise settlement. The principle is identical with the one in the instant case.

"The commissioner contends that this view results in a 'windfall' to the railroad. If a benefit that is derived by a taxpayer from a deduction allowed by law may be called a windfall, he is correct. It is no more a windfall than would have been the State's advantage in 1937 if the income accrued from the repeal of the tax had resulted in a much higher tax on the railroad. The fact that the application of rules of law results in relieving the railroad from the payment of taxes for 1936 is no argument against the law. The law is universal, uniform, undiscriminatory, and unaffected by fortuitous consequences. If the railroad had made a profit in 1937 and had refused to accrue the repealed taxes in 1937, its taxes would have been reassessed to cover the additional income. So, if there is a 'windfall' it is a mere incident without a rational bearing on the issues involved."

It is to be noted that the Court of Appeals of Georgia relied upon Commissioner v. Central United National Bank, 6 Cir., 99 F.2d 568, which, as we have seen, has been impliedly repealed by the Supreme Court's decisions in the Dixie Pine Co. and the Security Mills Co. cases. There is no more reasons for saying that the Georgia decision has not been impliedly disapproved by those decisions than for saying that Commissioner v. Central United National Bank, J. A. Dougherty's Sons v. Commissioner, and Davies' Estate v. Commissioner, supra, have not been impliedly disapproved.

The latest application by any Federal appellate court of the principle announced in the Dixie Pine Co. decision is to be found in Brighton Mills v. Commissioner, 161 F.2d 791, a decision of the Fifth Circuit Court of Appeals, and in Sohio Corporation v. Commissioner, 163 F.2d 590, a decision of the Court of Appeals for the District of Columbia. In the first of these cases a seller had agreed in 1935 to credit the buyer's account with the amount of any processing tax under the Agricultural Adjustment Act of 1933 which, in the event of its invalidity, the seller should be relieved from paying with respect to any invoiced goods as to which title had passed within 120 days prior to a determination of the invalidity of the tax. The tax was held invalid in January, 1936. Affirming a decision of the Tax Court, the Circuit Court of Appeals held that the seller, which kept its books on the accrual basis, could not, in computing its 1935 income tax, deduct the amounts paid customers in 1936 under the aforementioned agreement with respect to goods delivered in 1935. In concluding its opinion, the Court said (161 F.2d 791 at page 793): "The ultimate liabilities in 1936 under these contracts had indeed a close relation to the income realized on the sales in 1935, and would at one time have been considered proper deductions in 1935 in order to truly represent the income of that year under the authority of Revenue Act of 1934, § 43, 26 U.S.C.A. Int.Rev. Acts, page 679; but as the Tax Court held, the decision in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, though differing in its facts, settles that this section does not authorize a taxpayer on the accrual basis to accrue as deductions liabilities like these which were contingent throughout the tax year."

In the other case above referred to, Sohio Corp. v. Commissioner, a crude oil dealer had been compelled by Illinois tax law, under protest and threat of heavy penalties, to withhold from his vendors a portion of the contract purchase price of oil, and accordingly had treated the full contract price as the cost of the oil on his income tax returns; had deducted that amount as cost of goods sold, and had promptly contested in the Illinois courts this compulsory withholding. Thereafter, the Illinois law being declared invalid, the dealer refunded the amount withheld, including the percentage which had been retained by him under the Illinois law for services. Reversing a decision of the Tax Court, the Court of Appeals held that the dealer did not receive "income" by reason of such withholding so as to render the percentage retained during years of retention subject to income and excess profits tax.

The facts in this recent case are not similar to those before us, so no purpose would be served in quoting from the Court's opinion except the following, showing the Court's adoption of the broad principle announced in the Dixie Pine Products Co. and Security Flour Mills Co. cases (163 F. 2d 590 at page 593): "The cases of Dixie Pine Products Co. v. Commissioner and Security Flour Mills Co. v. Commissioner dealt with deductions from income and held that a taxpayer may not accrue an expense the liability for which is contingent and is contested by the taxpayer. The problem in the present case concerns income rather than a deduction, but we think that the same principle applies. If, as a matter of law, a deduction is not accruable if the liability is contingent and contested by the taxpayer, similarly income is not accruable if the right thereto is contingent, being denied and contested by the taxpayer."

The firmly established theory of the federal income tax laws is annual accounting whereby, so far as possible, each year is treated and closed out as a separate entity. Therefore, it would seem more logical and consistent as a matter of practical application to permit the taxpayer to accrue taxes whose validity is being contested by litigation, during the years that such litigation is pending, rather than to postpone a ruling with respect to such accrual until the litigation is finally terminated, which may be, and often is, years after it has been begun. As was said by the Supreme Court in Chicot County District v. Bank, 308 U.S. 371, at page 374, 60 S.Ct. 317, at page 318, 84 L. Ed. 329, "The actual existence of a statute, prior to such a determination [of unconstitutionality], is an operative fact and may have consequences which cannot justly be ignored." Thus, there is much weight in the following passage contained in the opinion of the Circuit Court of Appeals for the Third Circuit, in J. A. Dougherty's Sons v. Commissioner, supra (121 F.2d 700 at pages 702, 703): "Nowhere is the propriety of recognizing and accrediting a status produced by a statute before its unconstitutionality has been judicially declared more strongly indicated than it is in the case of tax statutes. The subject taxpayer is under compulsion to pay due regard to the requirements of the statute until its invalidity has been authoritatively adjudicated. The Board of Tax Appeals has so recognized in a number of cases where deductions have been allowed for taxes paid under statutes which were later held to be invalid. The fact that, in the Board cases just referred to, the taxes had been paid within the taxable year rather than accrued is of no moment upon a consideration of the effect of a tax liability imposed by a statute prior to an adjudication of its invalidity." Nevertheless, logical and practical as this line of reasoning appears to be from an accounting and taxation standpoint, the Supreme Court has refused to adopt it.

It is of course true that in the present case the Government was asserting validity of the Carriers' Taxing Act of 1935 just as much as the Railroad was asserting the invalidity of that Act. This position of the Government persisted until June 29, 1937, when Congress repealed the Act by enacting the substitute·law. This was three months after the Railroad Company's income tax return for 1936 had been filed. So the Railroad Company claims that it is untenable for the Government to assert on one hand that the Act was valid and in full force and effect, and on the other

hand, that the Railroad Company could not accrue the tax under that Act because the Act was invalid. The Railroad Company claims that it could not safely have done otherwise than accrue the tax for the year 1936 because, if after the expiration of that year the validity of the 1935 law had been upheld, it, the Railroad Company, would have been denied the right to take a deduction for the tax ultimately paid in a subsequent year. In support of this argument the Railroad Company cites such decisions as Russell-Miller Milling Co. v. Helvering, 63 App.D.C. 74, 69 F.2d 392, and Continental Baking Corp. v. Helvering, 64 App.D.C. 241, 79 F.2d 119.

The Railroad Company further contends that the Bureau of Internal Revenue, by the promulgation of its present ruling more than seven months after the close of the tax year in question, and more than four months after the Railroad Company's income tax return for that year had been filed, imposes, in effect, a retroactive penalty upon all carriers who were parties to the case to test the constitutionality of the Taxing Act of 1935 or otherwise contested their liability thereunder. The Railroad Company points out that there was no way in which the status of these various carriers with respect to their rights under this Act could have been changed by their participation or their declination to participate in this litigation, because if the final outcome of that litigation had been to declare the Act unconstitutional, all of the carriers which would otherwise have been subjected to its provisions would have been entitled to exoneration from tax liability under it, whether or not they had been parties to the litigation.

The Railroad Company stresses the point that it is inherent in our concept of constitutional rights that every citizen shall be afforded ready access to the courts in order that he may have his rights adjudicated—a concept which it is said is violated in the present case, because here the Government has imposed a retroactive penalty upon certain taxpayers solely because they have sought the protection of a court rather than try to obtain it vicariously through the action of other taxpayers. The effect of such position, as the Railroad Company

claims, is illustrated by the fact that a small subsidiary of the Baltimore & Ohio Railroad Company, namely, the Curtis Bay Railway Company, omitted, apparently through inadvertence, as a party plaintiff in the present case, was allowed a deduction for accrued taxes of some $400, whereas other carriers, whose income tax returns were consolidated with that of the plaintiff, were denied refund because they were actually parties to the litigation which contested the constitutionality of the Carriers' Taxing Act of 1935.

There is doubtless considerable weight in these contentions. At least we do not subscribe to the interpretation placed by counsel for the Collector upon the Supreme Court's decision in the Dixie Pine Company case to the extent of saying that when, why and how that Company accrued the taxes in question on its books had no part in the reasoning or ruling of the Court, and that the critical, if not the only fact which caused the Supreme Court to rule that the Company's liability was not "accrued," within the meaning of Section 23(c) of the Revenue Act of 1936, was that the Company's tax liability was contested by it.

The true test of contingency as laid down by the Supreme Court, as we read the Court's opinions in the Dixie Pine Co. and Security Mills Co. cases is whether, in the taxable year, all of the events have occurred which fix the taxpayer's liability for items of indebtedness deducted though not paid. The Court said (320 U.S. 516 at page 519, 64 S.Ct. 364 at page 365) that "This cannot be the case where the liability is contingent and is contested by the taxpayer." Then the Court went on to say the taxpayer could not successfully claim that its liability was fixed and certain while at the same time "strenuously contesting liability in the courts," but that "It must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated." We take all of these statements together to mean simply that as long as the taxpayer's liability has not been finally and legally adjudicated, such liability is not fixed but contingent.

168

In support of its statements which we have above analyzed, the Court cites in footnotes three cases, United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L. Ed. 347, Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010, and Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725. In the first of these cases the Court held that the taxpayer's liability for taxes on profits on munitions, imposed by the Revenue Act of 1916 at a fixed rate on the taxpayer's business done in the year 1916, had accrued in that year and was a charge on the business of that year, although the exact amount of taxes due may not have been then ascertainable, and although the taxes were not payable until the following year and that, therefore, the taxpayer was permitted to include in its deductions in its income tax return for 1916 the amount of a "reserve" entered on its books for these taxes.

In the second case a judgment had been obtained against the taxpayer in the year 1922 as a result of a suit brought in the year 1919, based on a breach of contract committed by the taxpayer in that year in discharging a sales manager. Though denying and contesting its liability by two appeals, on both of which the judgment against the taxpayer was affirmed, the taxpayer had nevertheless set up on its books for the year 1919 a reserve equal to the sales manager's commissions in that year, computed on the contract basis; had increased this reserve in 1920 on the same basis; and after rendition of the judgment, had adjusted the reserve to the amount of the recovery which the taxpayer paid in 1923. The Court held that since it could not be said that the loss, because of the judgment actually paid by the taxpayer in 1923, was, as a matter of law or undeniable fact, sustained by the taxpayer in the year 1919; and since the taxpayer had not in that year accrued on its books an estimated amount of the loss because the reserve which it had set up had no relation to the apprehended total loss, but constituted simply the amount of commissions which would have been payable in that year if the discharged person had remained in the employment of the taxpayer, such reserve was not allowable as a deduction for the year

1919. The Court distinguished this case on its facts from United States v. Anderson, supra.

In the third case above referred to, the Court disallowed, as deductions for a given taxable year, the bookkeeping charges of a general agent of fire insurance companies representing credits to a reserve account, since they were not expenses either paid or incurred during the taxable year and merely represented cancellations which it was anticipated might occur in future years.

It will thus be seen that in only one of these earlier decisions upon which the Court relied in the Dixie Pine Co. case, namely, Lucas v. American Code Co., was the taxpayer disputing liability for a claimed deduction.

Of course we do not mean to go so far in the present case as to say, as do counsel for the Railroad Company, that the fact that it contested the tax had nothing to do with repeal of the tax, since Congress and not the courts repealed it. The fact that the Railroad Company did contest the validity of the tax is, as the Supreme Court has said, indicative of the contingent nature of the liability. This is different from saying that liability for, or the right to deduct tax accruals is absolutely controlled by the attitude or overt acts of the individual taxpayer. This reasoning, we believe, is confirmed by the fact that those who might have advised the present plaintiff prior to the decision in the Dixie Pine Co. case would have had ground to conclude on the then state of the authorities, that the fact that liability for taxes would be disputed would not defeat plaintiff's right to accrue them; but that on the contrary, unless taxes were deducted in the year when they accrued, their deduction could not thereafter be made, as evidenced by the decisions heretofore cited, such as Russell-Miller Milling Co. v. Helvering, and Continental Baking Corp. v. Helvering, supra. But apart from such considerations, it is to be noted that in the Dixie Pine Co. case the taxpayer individually contested the tax as not applicable to it and, for all that appears, no other taxpayer was similarly situated. So there was no one else but the plaintiff company to contest. On the other hand, in the present case, the Carriers' Taxing Act

of 1935, the validity of which was at issue, applied equally to *all interstate carriers, and to them and their employees alone*. If we were dealing with a statute of different and greater scope, as for example, existing income tax statutes, it might well be that an individual or group of individuals, or a corporation or group of corporations in one locality might see fit to contest such a statute or some part of it, with which dispute other individuals or corporations might have no concern and even no knowledge, and the result of which might not even affect them. They, therefore, could not be said to be protestants along with those individuals or corporations who had actually undertaken the litigation. However, in the case of the Carriers' Taxing Act of 1935, only the carriers and their employees could attack its validity. It embraced no other taxpayers. If in a final test of its validity the statute had been upheld, all the carriers would have been adversely affected whether parties to the test suit or not. Similarly, if there had been a final adjudication that the Act was invalid, all the carriers would have been favorably affected thereby. So it is our conclusion that in a situation such as that before us in the present case, whether the taxpayer's liability is, in fact, contingent does not hinge, nor do we believe that the Supreme Court intended such to be the effect of its decision in the Dixie Pine Co. and the Security Mills Co. cases, upon whether he individually contested his liability, since he is bound to be controlled by the result of any final contest as to the law's validity.

The Railroad Company asserts that it has been unjustly discriminated against in that similar deductions have been allowed to those carriers that did not contest the tax liability. On behalf of the Collector it is asserted that, apart from whether there may be any merit in this contention, it cannot be resorted to in the present proceeding since it was not asserted in the claim for refund. In support of this contention Real Estate Title Co. v. United States, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542, is cited. While it is true that, as determined by this and similar decisions, where a claim for refund is based exclusively on certain specified grounds, in the absence of a waiver by the Government or proper amendment the taxpayer would be precluded in a suit of this kind from resting its claim on another ground, we do not think that the assertion of discrimination made in the present case is, in fact, a different ground but merely a part of the Railroad Company's original contention.

However, it is further contended on behalf of the Collector that the question here at issue is not whether the deduction was properly allowed with respect to some other carriers, but whether the Baltimore & Ohio Railroad Company is itself entitled to the claimed deduction. It is asserted that it would be a novel doctrine should a court grant a deduction not authorized by a statute as judicially interpreted on the ground that the same deduction had been erroneously allowed to some other taxpayer. Taken literally, we believe this statement to be correct. Yet we do not go so far as to say, as the Collector would have us do, that we should not consider whether or not that part of the Collector's ruling as embodied in Income Tax Ruling No. 3116 which permits the sort of deduction here in issue to be made by carriers who have not contested liability under the Carriers' Taxing Act of 1935, is an erroneous ruling, even though its application is not before us for adjudication since none of the carriers affected thereby is a party to this proceeding. Indeed, it follows from what we have heretofore said that we see no valid ground for the distinction made in paragraphs (b) and (c) of Income Tax Ruling No. 3116 between carriers who have themselves actually contested liability for the tax and those who have not done so, in determining the basis for allowance or disallowance of the tax deduction.

In view of what we have just said with respect to so-called class "(b)" carriers under Income Tax Ruling No. 3116, it is appropriate to point out that we believe those in class "(a)" are in an entirely different situation, because having actually paid the tax, the amount so paid undoubtedly constitutes "Taxes paid * * * within the taxable year" as provided in section 23(c) of the Revenue Act of 1936, and, therefore, the question of whether a deduction for taxes has "accrued" within

the meaning of that section is not involved. See Security Flour Mills Co. v. Commissioner, supra; Chestnut Securities Co. v. United States, 62 F.Supp. 574, 104 Ct.Cl. 489; Cooperstown Corp. v. Commissioner, 3 Cir., 144 F.2d 693. See also, Rothensies v. Electric Battery Co., 329 U.S. 296, 67 S. Ct. 271.

To summarize and conclude: While we find that the Railroad Company's contention is reasonable and consistent with an income tax accounting practice heretofore rather generally considered proper, nevertheless, it cannot be reconciled with the most recent rulings of the Supreme Court. Therefore, the Railroad Company's motion for summary judgment must be denied and the Collector's motion for judgment on the pleadings must be granted.